[No. 20249-6-III. Division Three. April 16, 2002.]

SUNNYSIDE VALLEY IRRIGATION DISTRICT, *Respondent*, v. DYKE
DICKIE, ET AL., *Appellants*.

210

*John S. Moore, Jr.* and *Brendan V. Monahan* (of *Velikanje, Moore & Shore, P.S.*), for appellants.

*Charles C. Flower* and *Patrick M. Andreotti* (of *Flower & Andreotti*), for respondent.

BROWN, C.J. — Appellant landowners, Dyke and Jane Doe Dickie, argue the trial court erred when (A) applying a right-of-way easement held by the Sunnyside Valley Irrigation District for the enlargement and maintenance of a long established irrigation lateral, and (B) entering a mandatory injunction requiring them to remove property from within the right-of-way. We adopt a rule followed elsewhere permitting parties to contract for an easement to take effect or be enjoyed in the future. Under our facts, the rule applied to permit the enlargement of both the lateral and the necessary adjacent maintenance area. We hold the trial court did not err in applying the easement or granting injunctive relief. Accordingly, we affirm.

## FACTS

The Dickies own agricultural land in Yakima County subject to a 1912 easement in favor of the United States. The District administers the easement, which is at the center of this case. For consideration, the Dickies' predecessor in title partly granted, and the United States effectively reserved:

> the necessary right-of-way for the construction and maintenance of all canals, laterals, flumes, pipe lines and waste ditches of the United States of America, or said Irrigation Company [the District's predecessor], heretofore constructed or hereafter to be constructed over and across said described land for the irrigation of other lands, with the right and permission to enter upon said land, for the survey, location, construction, enlargement and repair of said canals, laterals, flumes, pipe lines and waste ditches, and to construct, maintain and repair the same by the United States of America, or the Irrigation Company, or the owner or owners of lower lands.

Clerk's Papers (CP) at 106.

Sometime between 1905 and 1923 the Matheson 2.68 lateral was built on the Dickies' property. The Matheson lateral system in its entirety serves over 1,000 acres; downstream from the Dickies' property it serves 65 acres and nine landowners. Part of the purpose of the easement was to provide irrigation for upstream and downstream properties.

In 1945, the District contracted with the United States to assume the maintenance of the irrigation system within the District's boundaries. In the 1950s, the upstream Roza irrigation system added substantial sediment into the Matheson lateral, requiring increased maintenance. By the late 1970s and early 1980s the District took over the maintenance of the Matheson lateral and other laterals from volunteer districts, which formerly performed the maintenance duties most likely by hand. Then, the District began mechanized maintenance.

At times, the District used a mower, backhoe, or sloper/grader to maintain laterals. The District's mechanized equipment was necessary to remove the sediment or silt deposits from the lateral in order to maintain lateral capacity in aide of both upstream and downstream users. The deposits are referred to as spoil. Access to both sides of the lateral is necessary because spoil is placed in piles on the banks of the lateral and then leveled. While a mower and backhoe can be used for this purpose, a sloper/grader is more efficient because it cleans the lateral and levels the spoil deposits in a single operation.

The parties agree the lateral and the area initially used for maintaining the Matheson lateral have been enlarged. The course or centerline of the lateral is not an issue. The District's use of a sloper/grader to maintain the Matheson lateral has caused the top or slope of the lateral to widen. In 1989, Lyle Dickie, Mr. Dickies' father, objected to the continued use of a sloper/grader because of the widening effect. As a result, the District indicated it would use a mower and backhoe to maintain the Matheson lateral instead of a sloper. Mr. Dickie then agreed to remove one obstructing tree and bush from the bank of the lateral.

In the late 1990s, Mr. Dickie planted or replanted several orchard trees and installed sprinkler heads within 20 feet of the Matheson lateral's centerline. In 1999, Mr. Dickie complained to the District about damage to his sprinkler heads by a sloper during maintenance work. The District acknowledged its earlier backhoe decision, but asserted a 15-foot setback from the lateral bank was necessary for maintenance, and demanded Mr. Dickie remove the obstructions. When Mr. Dickie refused, the District filed suit.

Following a three-day bench trial and a view of the property, the trial court decided the easement gave the District the right to enlarge the lateral. Applying the doctrine of reasonable enjoyment, the trial court set 20 feet bilaterally from the lateral's centerline for the District's easement. The District was granted a mandatory injunction requiring the Dickies to remove any facilities interfering

with the District's easement, including a few trees that were over 40 years old, and the Dickies were restrained from any future interference. After the Dickies' motion for reconsideration was denied, they filed this appeal.

## ANALYSIS

### A. Easement

The issue is whether the trial court erred in applying the 1912 easement and considering among the facts the District's present maintenance needs when establishing the 20-foot bilateral easement width from the lateral's centerline.

■■ When findings of fact and conclusions of law are entered following a bench trial, appellate review is limited to determining whether the findings are supported by substantial evidence and, if so, whether the findings support the trial court's conclusions of law and judgment. *Holland v. Boeing Co.*, 90 Wn.2d 384, 390-91, 583 P.2d 621 (1978). Evidence is substantial if it is sufficient to persuade a fair-minded person that the declared premise is true. *Bang D. Nguyen v. Dep't of Health*, 144 Wn.2d 516, 536, 29 P.3d 689 (2001), *cert. denied*, 535 U.S. 904 (2002). As the challenging party, the Dickies bear the burden of showing that the findings are not supported by the record. *Standing Rock Homeowners Ass'n v. Misich*, 106 Wn. App. 231, 243, 23 P.3d 520 (2001).

■■ The 1912 easement was created by a specific grant. Both parties are bound by its terms. The grant does not define the exact location or width of the easement. The scope of an easement is established by the original grant. *Brown v. Voss*, 105 Wn.2d 366, 371, 715 P.2d 514 (1986); *Zobrist v. Culp*, 95 Wn.2d 556, 560, 627 P.2d 1308 (1981). A court's primary duty in construing an express easement is to ascertain and give effect to the parties' intent. *Schwab v. City of Seattle*, 64 Wn. App. 742, 751, 826 P.2d 1089 (1992). The parties' intent is determined from the language of the

easement and the circumstances surrounding the grant. *Id.*; *see also Harris v. Ski Park Farms, Inc.*, 120 Wn.2d 727, 743, 844 P.2d 1006 (1993).

Courts asked to determine the scope of an easement will generally consider the intention of the parties to the original grant, the nature and situation of the properties subject to the easement, and the manner in which the easement has been used and occupied. *Logan v. Brodrick*, 29 Wn. App. 796, 799-800, 631 P.2d 429 (1981). What the parties intended by their grant is a question of fact. *Veach v. Culp*, 92 Wn.2d 570, 573, 599 P.2d 526 (1979). The legal consequence of that intent is a question of law. *Id.*

When the description of an easement is not specified within the grant, the location is established and fixed when the grantee selects the location of the easement. *Mielke v. Yellowstone Pipeline Co.*, 73 Wn. App. 621, 624, 870 P.2d 1005 (1994). The previously undefined width is then established by the rule of "reasonable enjoyment." *Id.* at 625. Under the doctrine of reasonable enjoyment, the width of an undefined easement is determined by considering the purpose of the easement and establishing a width necessary to effectuate that purpose. *Everett Water Co. v. Powers*, 37 Wash. 143, 152, 79 P. 617 (1905). Determination of the necessary width under the doctrine of reasonable enjoyment is a question of fact. *Mielke*, 73 Wn. App. at 625.

The District argues the general rule of reasonable enjoyment does not apply to fix the width of the easement because the easement specifically grants the right to enlarge that lateral at any time in the future. The Dickies, while conceding the enlargement clause, argue the right to enlarge the lateral must focus on the circumstances found at the time of the original grant, not the needs as evolved later.

In Finding of Fact 9, the trial court found the granting parties considered enlargement as "essential and necessary" to serve contemplated future needs. CP at 44. The Dickies, using a plain language analysis, argue the easement does not support this finding. Instead, they advocate

a meaning limiting enlargement solely to the lateral, not the overall easement to include needed maintenance. In support they point to the nonmechanized maintenance circumstances most likely employed at the time of the grant. We disagree with the Dickies.

■■■ First, the Dickies' argument ignores the conjunctive grant of right-of-way for both construction and maintenance. The centerline of the lateral did fix the course of the lateral consistent with the rule of reasonable enjoyment as discussed in *Mielke*. But, as the width of the lateral was enlarged, so was the area necessary for maintenance. In other words, as the lateral width encroached into the former maintenance area, the maintenance area logically required a corresponding extension.

Second, the circumstances extant at the time of the easement grant do not persuade us that the District's use of modern equipment is forbidden. The expected expansions of the irrigation system, like the Roza project, were anticipated circumstances likely to bring increased maintenance for the increased silt and resulting spoil. Thus, the increased maintenance use is not a forbidden change in use. *See Lowe v. Double L Props., Inc.*, 105 Wn. App. 888, 894, 20 P.3d 500, *review denied*, 145 Wn.2d 1008 (2001) (servient estate holder may not resist an increase in use, but may resist any attempted change in use).

Moreover, to follow the Dickies' reasoning would lead to a clearly unintended result, a larger lateral without any practical maintenance capability. As explained, the easement implicitly, if not specifically, grants the right to enlarge the lateral along with the right to enter upon the land to enlarge, repair, *and* maintain the lateral. Using the Dickies' reasoning, the lateral could never be enlarged to a size greater than the total width used at the initial centerline selection. The easement contains no such restriction. While not specifically stated, the need to enlarge the lateral logically includes the need to enlarge the adjacent maintenance area. In this sense, the enlargement of the

maintenance area is part and parcel of the right to enlarge the lateral.

The Dickies argue *Mielke* implies an easement's width can never be enlarged. In *Mielke*, a pipeline company held an undefined easement allowing it to operate, maintain, repair, and replace a pipeline across the Mielkes' property. The easement also granted the right to change the size of the pipeline. When the pipeline company attempted to replace the pipeline by building a new pipeline 10 feet from the existing one, the appellate court held that material issues of fact existed as to whether the new pipeline was within the scope of the easement as originally designated. *Mielke*, 73 Wn. App. at 624-25.

The holding in *Mielke* does not aid the Dickies. There, the appellate court held material fact issues existed, and reversed a summary judgment. Here, after trial, the court found the granting parties intended the easement to be enlarged as need required. *Mielke* did not hold as a matter of law that parties cannot agree to a flexible easement.

While no Washington cases have been cited addressing easements providing for future enlargements, the case of *Patterson v. Chambers' Power Co.*, 81 Or. 328, 159 P. 568 (1916) is on point. In *Patterson*, the plaintiffs sought to enjoin the defendant power company from enlarging the millrace (waterway) that abutted their properties. The power company owned an easement across the plaintiffs' properties for the millrace, which included "the right to dig the raceway as deep and wide as may be necessary." *Id.* at 570. The *Patterson* court began its analysis with the premise that "[i]t is contrary to the general policy of the law to restrict the power of citizens to make any kind of contract which they may see fit to enter into so long as the proposed contract does not affect the morals or well-being of society to such an extent as to be against public policy." *Id.*

Throughout the *Patterson* opinion, the court addressed many of the same arguments raised by the Dickies, including the well-settled principle that an undefined easement becomes fixed as to location and width once selected by a

grantee. In response, the court noted none of the grants in the cases cited for this principle included a specific provision for future enlargement of the easement. *Id.* at 573. "We are aware of no rule of law, and there is none, prohibiting the grant of an easement to take effect or to be enjoyed in the future, and that is this case." *Id.* at 570.

After reviewing the law, including *Everett Water*, the court held, "if from the terms of the grant there is manifested a clear intention that the grantee shall enlarge the space originally occupied by him in accordance with the demands of the future, such enlargement will be upheld." *Id.* at 572. Other jurisdictions have reached similar results. *See Knox v. Pioneer Natural Gas Co.*, 321 S.W.2d 596, 600 (Tex. Civ. App. 1959) ("[I]f the language of the grant clearly gives the grantee a right in excess of the one actually used, such right would still exist notwithstanding the exercise of a lesser privilege."); *C.F. Lott Land Co. v. Hegan*, 177 Cal. 169, 169 P. 1035, 1037 (1917).

We conclude the *Patterson* reasoning is persuasive. We hold the easement granted to the United States by the Dickies' predecessor gave the specific right to enlarge the lateral as deep and wide as necessary, together with the concurrent right to widen the maintenance area as reasonably necessary. In doing so we recognize a rule permitting parties to contract for an easement to take effect or be enjoyed in the future.

We note no evidence exists indicating the need for future enlargement based upon contemplated irrigation expansions. Further, no condemnation issue is presented because the right to enlarge is contractual. Our holding makes it unnecessary to address the Dickies' challenge to the exact time when the District began using sloper/graders, or the exact time when the lateral was enlarged.

■■■ The Dickies assign error to numerous other findings of fact. Contrary to the Dickies' argument, the District's failure to address every finding challenged by the Dickies does not result in waiver or default of the issue in favor of the Dickies. The Dickies have not met the burden of

showing that challenged findings are not supported by substantial evidence. *Standing Rock*, 106 Wn. App. at 243. Further, at argument, counsel for respondent explained one typographical error in its briefing in which Finding of Fact 25 was referred to as Finding of Fact 26.

 The Dickies challenge the trial court's finding that their use of the area now needed by the District for maintenance was "privileged." However, the Dickies' farming activities on the District's reserved easement north of the lateral were privileged and subject to termination by the District because when the District required more of its reserved easement for maintenance of the lateral, it had a superior easement right due to the enlargement agreement. The Dickies may use the servient estate so long as their use does not interfere with the District's easement. *Veach*, 92 Wn.2d at 575.

 The Dickies contend no evidence exists supporting 20 feet from the centerline of the lateral, even with a sloper/grader. The trial court's finding is supported by the testimony of James Trull, the District's manager. Mr. Trull testified the District uses a sloper/grader to maintain the lateral running through the Dickies' property. The sloper/grader requires approximately 15 feet from the top of the lateral slope outward, or 20 feet from the centerline of the lateral. The Dickies' challenge to Mr. Trull's credibility on appeal is misplaced. *See In re Marriage of Greene*, 97 Wn. App. 708, 714, 986 P.2d 144 (1999) (an appellate court will not substitute its judgment of the evidence).

## B. Injunction

The issue is whether the trial court erred by abusing its discretion in granting the District a permanent, mandatory injunction.

 " 'A suit for an injunction is an equitable proceeding addressed to the sound discretion of the trial court, to be exercised according to the circumstances of each case.' " *Standing Rock*, 106 Wn. App. at 240 (quoting *Steury v.*

*Johnson.* 90 Wn. App. 401, 405, 957 P.2d 772 (1998)). A trial court has broad discretion to fashion an injunction that is appropriate to the facts, circumstances, and equities before it, and the reviewing court will give great weight to the trial court's exercise of discretion. *Id.* at 240-41.

Without challenging the trial court's finding that certain trees and sprinklers interfered with the 1912 easement, the Dickies initially contend they have not interfered with the easement as it was originally established. This contention is premised upon a theory we have rejected, that the easement did not permit enlargement. Accordingly, we need not further address this contention.

The Dickies next contend the District failed to meet its burden of proving the need for an injunction. A party requesting injunctive relief has the burden of proving (1) a clear legal or equitable right; (2) a well-grounded fear of immediate invasion of that right; and (3) that the acts complained of are either resulting in or will result in actual or substantial injury. *Tyler Pipe Indus., Inc. v. Dep't of Revenue,* 96 Wn.2d 785, 792, 638 P.2d 1213 (1982). The Dickies argue the District's right was not "clear" because the District had no right to the disputed area before the trial court's decision. We disagree.

First, standing is important in cases where the parties and issues are remote. *Osborn v. Grant County,* 78 Wn. App. 246, 248-49, 896 P.2d 111 (1995), *rev'd on other grounds,* 130 Wn.2d 615, 926 P.2d 911 (1996); 15 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: TRIAL PRACTICE CIVIL, § 648 *Requirements for Injunctive Relief—Necessity of a Right or Interest in Subject Matter (Standing),* at 472 (5th ed. 1996). Here, the District is contractually bound to act. Further, the Dickies concede the enlargement language is specific, and have even urged a plain meaning interpretation of the easement language, an interpretation we have, however, rejected.

Second, relevant to a preliminary injunction, the element requires a court to examine the likelihood that the petitioner will prevail at trial. *Tyler Pipe,* 96 Wn.2d at 793. This prevents the issuance of an injunction in doubtful cases.

*Isthmian S.S. Co. v. Nat'l Marine Eng's' Beneficial Ass'n*, 41 Wn.2d 106, 117-18, 247 P.2d 549 (1952). Here, the District prevailed at trial, not at a preliminary hearing, obviating the concern. Thus, the first element is satisfied.

The Dickies next contend the District did not have a well-grounded fear of immediate invasion because no evidence existed indicating the Dickies would continue to interfere with the easement. The trial court found, however, at the time of trial that the Dickies had not removed the sprinklers or trees interfering with the easement despite the District's earlier request. The court found the Dickies' interference with the easement caused substantial and irreparable harm to the District and other landowners who receive their irrigation from the lateral. These findings are supported by substantial evidence.

Finally, the Dickies contend any interference would not be irreparable because the District has a legal remedy, namely condemnation. But, the District does not have to condemn that which it already owns. Nor would a judgment for damages have any effect on the continuing violation.

In sum, the trial court found that the Dickies' improvements encroached within and interfered with the easement. It properly ordered the Dickies to remove the improvements and refrain from further interference.

## CONCLUSION

The trial court did not err when applying the easement to the facts it found existed. The facts are supported by substantial evidence. The trial court did not abuse its discretion when granting a permanent, mandatory injunction that ordered removal of obstructions within the determined easement and prohibited future interference with the easement.

Affirmed.

SCHULTHEIS and KATO, JJ., concur.

Review granted at 147 Wn.2d 1020 (2002).