180 P.3d 874 (2008)
Dennis SAVIANO, Appellant,
v.
WESTPORT AMUSEMENTS, INC., an inactive Washington corporation; Harold Prater and Dawn Prater, husband and wife, and the marital community composed thereof, Respondents.
No. 36121-3-II.
Court of Appeals of Washington, Division 2.
April 15, 2008.
David P. Horton, Law Office of David P. Horton Inc., PS, Silverdale, WA, for Appellant.
John Michael Morgan, J. Michael Morgan PLLC, Olympia, WA, for Respondents.
*875 ARMSTRONG, J.
¶ 1 Dennis Saviano appeals the trial court's findings that his loans to Westport Amusements, Inc. were acts of "self-dealing" and its conclusion that Saviano was not a secured creditor of Westport and thus was not entitled to reimbursement of his loans before sharing the dissolved corporation's capital with the other stockholders. Finding no error, we affirm.

FACTS
¶ 2 Westport Amusements, Inc. (Westport) is a Washington corporation formed in 1993 by Saviano and Harold and Dawn Prater. Saviano holds 55 percent of the corporation's stock and the Praters hold 45 percent. At the time of its formation, Harold Prater and Saviano were the corporate directors.
¶ 3 Westport's sole business was the Westport Family Fun Center amusement park. The Praters lived nearby and contributed $40,000 annually in labor and some financial backing in managing the park while Saviano, who lived out-of-state, contributed capital and business expertise to start and maintain the company. Both parties undertook personal financial responsibility for corporate obligations.
¶ 4 On April 28, 2002, Saviano wrote a letter to the Port of Grays Harbor County enclosing "our check" for $28,791.12 to cover past due lease payments. Ex. 1. In seeking a lease amendment, the letter noted that the park was experiencing difficulty due to the economic downturn and described the parties' financial contributions:
I have never taken out one cent for my time or the money that I have put into the fun center. I personally have over $400,000.00 in the fun center. Harold and Dawn haven't taken any money out either. They haven't even been able to take wages or any other compensation out for all the time and effort they have devoted to the fun center. They also have as much money as I do in the fun center. All the money we have put into the fun center was not for any payables. It was used to create new attractions. Up until two years ago we were always able to pay our payables timely.
Ex. 1 at 1. On May 1, 2002, Saviano executed a promissory note for $150,000 with the corporation as borrower and himself as creditor.
¶ 5 In August 2002, the Praters informed Saviano that they would stop operating the park as of October 31, 2002. When the Praters resigned, the parties abandoned Westport's ongoing business operations. Saviano stepped in and undertook the responsibility to preserve and sell the corporate assets. Notable debts included the port lease, lending institution financial obligations, and corporate taxes owed to local governments.
¶ 6 The Praters and Saviano held an annual shareholders' meeting on April 14, 2003. Saviano passed a resolution to amend the corporate bylaws to allow only one director and nominated and elected himself as that director, as well as president.
¶ 7 On April 15, 2004, Saviano prepared a "Written Consent of the Director Without a Meeting" whereby he authorized the corporation to borrow money from him. Ex. 16; Clerk's Papers (CP) at 185. In April 2006, Saviano executed another promissory note for $300,000 that superseded the 2002 note.
¶ 8 In August 2006, the corporation negotiated a sale of its assets. When the shareholders could not agree on the terms of the sale, Saviano commenced this action to dissolve the corporation and asked the court to sell the corporate assets on the terms he had negotiated with the purchaser. The Praters then consented to dissolution and to the sale, which resulted in a payment of $350,000 into the court registry for distribution. When Saviano sought reimbursement for the loans he made to Westport, the Praters disputed his right to be repaid the loans. The parties moved for summary judgment on this issue, and the trial court denied both motions.
¶ 9 After a two-day trial, the trial court found Saviano's promissory notes a product of "self-dealing" and unenforceable, but it recognized that his actions in paying Westport's debts and selling its assets entitled him to recover the payments he made on Westport's behalf from 2003 to 2006. CP at *876 172. The trial court entered the following disputed findings and conclusions:
Findings of Fact
. . . .
8. The Court finds that the Praters had abandoned the corporation in 2002, and that Mr. Saviano's actions on behalf of the corporation and personally were conflicting. Mr. Saviano's actions were self-dealing and he undertook this course of action to further enhance his future ability to recover all of his future and past investments by executing promissory notes on behalf of the corporation to repay the amounts he paid to creditors and filed UCC documentation (Exhibit 22) to secure the amounts.
9. Through his actions in running the corporation he failed to acknowledge and preserve for capital contribution purposes the investment of past labor by the Praters.
10. During the course of these actions, Mr. Saviano incurred the additional debt, he renegotiated the Port lease and made payments on same; paid corporate tax obligations and basically took all necessary actions to preserve the assets of the corporation in order that losses for personal obligations not occur or be limited. The parties stipulated that the amounts paid by Saviano were accurately reflected in Exhibit 4, which was admitted, and that those amounts were paid to corporate creditors. His actions did not benefit the corporation, but benefited both parties on a personal basis.
11. Saviano undertook, for personal reasons, to wind down and sell the corporate assets. For all intents and purposes Mr. Saviano became a "quasi" receiver from 2002[sic] until the time of trial.[1]
. . . .
Conclusions of Law and Order
. . . .
3. Based on the foregoing Findings of Fact, the Court finds that the net proceeds should be distributed as follows:
. . . .
B. The promissory notes and other corporate actions making Saviano a secured creditor of the corporation are unenforceable and shall not be paid.
C. Mr. Saviano incurred additional debt in the amount of $179,108 for calendar years 2003 through 2006 to preserve the assets of the corporation and further preserve personal assets of the parties. He is thus entitled to be reimbursed for those sums similar to what a receiver would have been allowed to arrive at the situation we are with the corporation's assets being sold and proceeds to be received.
. . . .
CP at 186-87.
¶ 10 Saviano now appeals, contending that the 2006 promissory note is enforceable and that he is entitled to receive the $122,000 he paid on Westport's behalf in 2002, in addition to the $179,108 he paid from 2003 to 2006. He also contends that he is entitled to prejudgment interest and attorney fees.

ANALYSIS
1. The 2006 Promissory Note
¶ 11 Saviano first argues that the trial court erred in ruling that the 2006 note was unenforceable. This issue implicates several of the findings and conclusions that Saviano challenges. When a court enters findings of fact and conclusions of law following a bench trial, our review is limited to determining whether substantial evidence supports the findings and, if so, whether they support the trial court's conclusions of law and judgment. Sunnyside Valley Irrigation Dist. v. Dickie, 111 Wash.App. 209, 214, 43 P.3d 1277 (2002), aff'd, 149 Wash.2d 873, 73 P.3d 369 (2003). Evidence is substantial if it is sufficient to persuade a fair-minded person that the declared premise is true. Sunnyside Valley, 111 Wash.App. at 214, 43 P.3d 1277. As the challenging party, Saviano *877 bears the burden of showing that the record does not support the findings he challenges. Sunnyside Valley, 111 Wash.App. at 214, 43 P.3d 1277.
¶ 12 Saviano asserts that he complied with the law in issuing the 2006 note and that the trial court had no legal grounds to invalidate it. He first observes that after the April 2003 shareholders' meeting, he controlled the corporation and could act on its behalf without a meeting. RCW 23B.08.210. He then observes that a corporate board has statutory authority to incur debt on the corporation's behalf. RCW 23B.12.010(1)(b). He also points to a provision of Westport's articles of incorporation stating that "[a]ny directors individually . . . may be pecuniarily or otherwise interested in, any contracts or transactions of the corporation, provided that the fact that he . . . is so interested shall be disclosed or shall have been known to the Board of Directors or a majority thereof." Ex. 11 at 3. Saviano thus argues that because he was the sole director and had authority to incur debt and to execute the promissory note in 2006, the note was valid and had to be paid on dissolution of the corporation. See RCW 23B.14.050, RCW 23B.06.400 (requiring dissolved corporation to pay its liabilities before distributing any property to shareholders).[2]
¶ 13 Directors can lend money to their corporation. In re Gaynes, 21 B.R. 504, 509 (Bankr.D.Ariz.1982); 18B Am.Jur.2d Corporations § 1512, at 501 (2d ed.2004). But courts closely scrutinize such transactions, which must be characterized by the utmost good faith. 18B Am.Jur.2d § 1512, at 501 (citing In re Trimble Co., 479 F.2d 103, 113 (3d Cir.1973); Intertherm, Inc. v. Olympic Homes Sys., Inc., 569 S.W.2d 467, 471 (Tenn.App.1978)). The burden of proving good faith is on the officer or director because of his fiduciary capacity:
As a fiduciary, the officer or director has a strong influence on how the corporation conducts its affairs, and a correspondingly strong duty not to conduct those affairs to the unfair detriment of others, such as minority shareholders or creditors, who also have legitimate interests in the corporation but lack the power of the fiduciary.
Intertherm, 569 S.W.2d at 471.
¶ 14 In echoing these principles, the Trimble court cited the following passage from Twin-Lick Oil Co. v. Marbury, 91 U.S. 587, 590, 23 L.Ed. 328 (1875):
"So, when the lender is a director, charged, with others, with the control and management of the affairs of the corporation, representing in this regard the aggregated interest of all the stockholders, his obligation, if he becomes a party to a contract with the company, to candor and fair dealing, is increased in the precise degree that his representative character has given him power and control derived from the confidence reposed in him by the stockholders who appointed him their agent. If he should be a sole director, or one of a smaller number vested with certain powers, this obligation would be still stronger, and his acts subject to more severe scrutiny, and their validity determined by more rigid principles of morality, and freedom from motives of selfishness."
Trimble, 479 F.2d at 113-14; see also Wenzel v. Mathies, 542 N.W.2d 634, 641 (Minn.App. 1996) (directors, officers and shareholders in closely-held corporation have a fiduciary relationship that imposes the highest standard of integrity and good faith); 18B Am.Jur.2d § 1460, at 445 (directors, officers, and shareholders in closely-held corporation are charged with the fiduciary duty of the utmost good faith and loyalty). Because it was a small business enterprise with a closely-knit group of shareholders, Westport was a closely-held corporation. Henn and Alexander, Laws of Corporations, at 694-95.
¶ 15 The trial court closely scrutinized the 2006 promissory note and concluded that it involved self-dealing because it characterized Saviano's 2002 capital contributions as secured debt the corporation owed to him. The trial court concluded that in transforming capital to debt in this manner, Saviano *878 sought to expand the scope of his recovery at the expense of the Praters, who also made capital contributions to Westport in 2002. The court allowed Saviano to recover the funds he paid on the corporation's behalf after the Praters resigned and abandoned the corporation, but it did not allow recovery of the $122,000 he paid in 2002.[3]
¶ 16 A capital contribution is a gift rather than a loan to a corporation. Henn and Alexander, Laws of Corporations, at 68. In both his briefing and his testimony, Saviano appears to recognize that the funds he paid in 2002 are capital contributions, although he sometimes refers to those payments as loans. For example, in his cross motion for summary judgment, he stated that the Praters stopped running the park in 2002, and that "[d]uring the next four years, Saviano loaned over $300,000.00 to the corporation [to] keep it afloat." CP at 129. He claimed that "[t]he loans in this case are all post 2002" and that he "has a right as a creditor to be repaid the loans he made to the corporation after the Praters resigned from their management positions." CP at 135, 137. In his reply to the Praters' response, he stated that the only dispute in the case was whether his post-2002 contributions were capital contributions.
¶ 17 Saviano testified that while the corporation was running, the money he put in constituted capital contributions, and once the business closed, he was lending the corporation funds. He testified that he was seeking to recover not his capital contributions but the money he spent after the business closed. On redirect, he stated that after October 2002, he began making loans to the corporation, but he then asserted that the loans started when he began paying the bills in April 2002. During closing argument, his attorney stated that the parties agree that before October 2002, their contributions were capital contributions. He added that "after 2002, those are the amounts that Saviano wants to recover." RP (Feb. 15, 2007) at 10. On rebuttal, he stated that "[n]othing before 2002 is going to be recovered by anybody." RP (Feb. 15, 2007) at 24. After the trial court made its oral ruling stating that it would draw the line in 2002, Saviano's attorney asked the court to consider the amounts Saviano paid in October 2002 and after.
¶ 18 In his opening appellate brief, Saviano again states that the loans at issue are post-2002. He then adds that the court should have included the 2002 expenses incurred to pay the deferred payables owing when the Praters abandoned the corporation and claims that he seeks reimbursement only "for the actual expenses he incurred in keeping the corporation solvent after the Praters abandoned it." Br. of Appellant at 27. In his reply brief, Saviano complains that the trial court's award did not include the sum he paid at the end of 2002 after the Praters resigned. He claims that he testified that after October 2002, he paid $122,699.78 on the corporation's behalf. He then states that he wants to draw the line at October 2002, instead of January 2003, and that the 2006 promissory note documented his intention that "the monies he fronted from the time the Praters resigned was not intended to be a capital contribution." Reply Br. of Appellant at 12. Despite these statements, he seeks to enforce a promissory note that covers payments starting in April 2002, six months before the Praters resigned.
¶ 19 The trial court did not err in invalidating the 2006 promissory note, which included all of Saviano's 2002 expenses, given his admissions that before the Praters resigned at the end of October 2002, all his payments were capital contributions, as were the Praters' contributions to that date. In his April 2002 letter to the Port, Saviano characterized the enclosed $28,000 payment as one from both him and the Praters, but the 2006 note includes that payment as secured debt owed to Saviano exclusively. Dawn Prater testified that she told Saviano that she and her husband would not put any more money into the corporation after October 2002, and she stated in a deposition that she and her husband "lived and breathed [Westport's] construction, management and improvements from November 1992 through October 2002." *879 RP (Feb. 15, 2007) at 120. She worked for the corporation without drawing a salary for most of its 10 years, and she paid some of its debts with her personal credit card. She also reimbursed herself for some of those payments, but she still had an outstanding balance in 2006. In drawing the line from the time the business was abandoned, the trial court found Saviano's payments for prior loans and the Praters' payments and investments in sweat equity equally irrelevant. "If you want to look at his prior loans . . . there should have been payments likewise to the Praters for their alleged investment. And those things did not happen." RP (Feb. 15, 2007) at 8.
¶ 20 Saviano paid only $1,500 of the $122,000 he seeks to recover after the Praters resigned at the end of October 2002. Moreover, Saviano lacked authority to lend the corporation money without the consent of the other director in 2002. The trial court could consider his conflicting statements concerning the funds he is claiming and how his 2002 payments should be characterized as an admission that his 2006 promissory note did indeed constitute overreaching or self-dealing; the note attempted to recharacterize capital contributions as loans at the expense of the minority shareholders who made capital contributions during the same time period. Saviano states that "[s]elf-dealing only occurs when a fiduciary takes actions that benefit him personally to the detriment of the party to whom a duty is owed." Br. of Appellant at 12. The personal benefit to Saviano from enforcing the 2006 note as well as the harm to the Praters is clear. An additional award to Saviano of $122,000 would virtually eradicate any recovery of corporate assets the Praters might receive. See Gentile v. Rossette, 906 A.2d 91, 103 (Del. Supr.2006) (harm to minority shareholder plaintiffs resulted from breach of controlling shareholder's fiduciary duty not to cause the corporation to effect a transaction that would benefit the fiduciary at the minority shareholders' expense). The parties did not agree on treating Saviano's 2002 expenditures as loans when he was one of two directors and when the business was functioning, and the trial court did not err in finding that Saviano engaged in self-dealing when he attempted to convert the funds he expended during that time period to secured debt.
¶ 21 Saviano also assigns error to the trial court's ruling that he was entitled to equitable relief as a "quasi-receiver" to recover the amounts he loaned the corporation after 2002. But Saviano's only quarrel with the equitable relief is that he had an adequate remedy at law  full recovery on the promissory note. Because we have affirmed the trial court's ruling that the promissory note is unenforceable, we need not address Saviano's argument that the trial court erred in granting equitable relief.
2. Prejudgment Interest
¶ 22 Saviano asserts that he is entitled to prejudgment interest on the full amount owed on the promissory note. He does not specifically ask for interest on the lesser equitable award and, more importantly, he does not discuss or cite authority supporting an award of interest on the equitable award. We do not address issues that a party neither raises appropriately nor discusses meaningfully with citations to authority. RAP 10.3(a)(6); State v. Mills, 80 Wash. App. 231, 234, 907 P.2d 316 (1995).
3. Attorney Fees
¶ 23 Saviano seeks attorney fees pursuant to a provision in the promissory note. Because we have held the note unenforceable, we deny Saviano's request for fees.
¶ 24 Affirmed.
We concur: HOUGHTON, C.J., and QUINN-BRINTNALL, J.
NOTES
[1] In its oral ruling, the trial court stated that it would "draw the line in the year 2002," when the business was abandoned, and it awarded Saviano only the sums he spent from 2003-2006. Report of Proceedings (RP) (Feb. 15, 2007) at 7.
[2] Saviano admitted that he lacked authority to execute the 2002 promissory note without the consent of Harold Prater, his co-director at the time, when he testified that his 2006 note superseded and incorporated the earlier note.
[3] As the ensuing discussion reveals, the Praters' argument that Saviano did not claim below that he was entitled to the 2002 payments must fail. Saviano did make this claim, albeit in a conflicting and contradictory manner.