# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

IN RE PARENTAGE AND SUPPORT OF:

L.L.

        Minor child.

KYLA ESTES,

        Appellant,

v.

JONATHAN LaVOI,

        Respondent.

No. 70921-6-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: September 22, 2014

SPEARMAN, C.J. — Kyla Estes appeals orders providing for the custody and support of her child, L.L. Because Estes fails to demonstrate that the trial court erred, we affirm.

## FACTS

Kyla Estes and Jonathan LaVoi are the parents of L.L., born August 28, 2012. The parents' brief romantic relationship had ended by the time L.L. was born, and their parenting relationship has been fraught with conflict. After L.L.'s birth, LaVoi regularly requested visitation with the child. On the occasions that Estes agreed, she would either arrive late, cut the visit short, or cancel the visit altogether. More often than not, however, Estes refused to allow LaVoi to visit.

Estes filed a petition for a residential schedule and a parenting plan, and the trial court entered a temporary order designating Estes as the primary residential parent of L.L. and giving LaVoi visitation twice a week. Estes frequently violated this order by failing to bring L.L. to scheduled visits.

On the few occasions that LaVoi was able to see L.L., Estes interfered with their relationship by making frequent allegations of abuse or neglect to third parties. For example, Estes told a hospital social worker that LaVoi used drugs while L.L. was in his care. Child Protective Services investigated Estes's claim and determined it to be unfounded. Estes also told L.L.'s pediatrician that L.L. had suffered injuries during a visit with LaVoi. The pediatrician did not observe any of the injuries alleged by Estes. Estes repeatedly contacted the Kitsap County Sheriff's Department to demand they perform welfare checks on L.L. while he was with LaVoi. Officers observed the child and saw no cause for concern.

Estes and her family also engaged in extensive hostile behavior towards LaVoi, his attorneys, the guardian ad litem (GAL) and several visitation supervisors. When L.L. was approximately one month old, Estes and her mother showed up unannounced at LaVoi's home at approximately 6:00 a.m. With L.L. in her arms, Estes spent more than ten minutes ringing LaVoi's doorbell, pounding on the door and yelling. Estes screamed obscenities about LaVoi's new girlfriend and told LaVoi he would never see L.L. again. Estes's mother also participated in the yelling. Estes contacted law enforcement at least eight times to claim that LaVoi or his friends had abused or harassed her. She and her parents filed multiple bar grievances against both LaVoi's attorney and the GAL and

sought an internal affairs investigation against an officer who performed a welfare check on L.L.

On May 8, 2013, the trial court ordered Estes to participate in a psychological evaluation with a psychologist approved by the GAL. Estes failed to undergo the evaluation.

On September 26, 2013, the trial court ordered that LaVoi be the primary residential parent of L.L. The trial court ordered Estes to bring L.L. to the courthouse by 4:00 p.m. that day. The order informed Estes that if she did not comply, the trial court would issue a bench warrant for her arrest and a writ of habeas corpus to recover the child. The trial court also entered a temporary restraining order restricting Estes from having any contact with LaVoi or L.L. except for supervised visitation. Estes failed to produce L.L. as ordered. The trial court issued a writ of habeas corpus and the King County Sheriff's Office spent seven days attempting to locate L.L. Estes's parents finally produced L.L. after a detective notified them that Estes would face criminal charges. Estes later admitted that she hid at her parents' house with L.L. during that time.

Trial began on October 21, 2013. LaVoi was represented by counsel and Estes, who had previously discharged her attorney, appeared pro se. Following three days of testimony, the trial court entered findings of fact and conclusions of law, a parenting plan and an order of child support. The trial court ordered that LaVoi remain L.L.'s primary residential parent. The trial court found that Estes's contact with L.L. should be restricted to a total of eight hours of supervised visitation a week because Estes

3

engaged in abusive use of conflict during the duration of L.L.'s life and had withheld access to L.L. from LaVoi for a protracted period of time without good cause. CP 1183. The trial court ordered Estes to pay LaVoi $10,000 in attorney fees due to her "intransigence and filing of frivolous motions." Clerk's Papers (CP) at 1181. The trial court also ordered Estes to pay LaVoi $296.23 per month in child support. In doing so, the trial court found Estes to be voluntarily unemployed and imputed her income at $1,345.00 per month based on her work history.

Proceeding pro se, Estes appeals the September 27, 2013 order designating LaVoi as the primary residential parent and the November 4, 2013 findings of fact and conclusions of law, parenting plan and order of child support.

<u>DECISION</u>

In determining a parenting plan, the trial court exercises broad discretion. In re Marriage of Kovacs, 121 Wn.2d 795, 801, 854 P.2d 629 (1993). A trial court's decision regarding custody or visitation will not be overturned absent abuse of that discretion. In re Marriage of Rich, 80 Wn. App. 252, 258, 907 P.2d 1234 (1996). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. In re Marriage of Littlefield, 133 Wn.2d 39, 46-7, 940 P.2d 1362 (1997). We review the trial court's findings of fact to determine whether substantial evidence supports the findings. Sunnyside Valley Irrigation Dist. v. Dickie, 111 Wn. App. 209, 214, 43 P.3d 1277 (2002). We do not review the trial court's credibility determinations, nor do we weigh conflicting evidence. Rich, 80 Wn. App. at 259.

## 1. September 26, 2013 Temporary Order

Estes claims that the trial court erred in designating LaVoi as the primary residential parent of the child and restricting her contact. She argues that she did not receive sufficient notice because she believed the hearing scheduled for that day was only a pretrial hearing and not one at which her status as primary residential parent would be determined. Because any temporary parenting plans entered pretrial are terminated by the final parenting plan, Estes's challenge to the September 26, 2013 order is moot. See RCW 26.09.060(10)(c).

## 2. November 4, 2013 Final Orders

Estes claims that the trial court erred in determining a residential schedule without considering the required statutory factors in RCW 26.09.187(3)(a).[1] But it is clear from the court's lengthy and detailed findings of fact that the court did

---

[1] RCW 26.09.187(3)(a) requires the trial court to consider the following factors when determining residential provisions:

(i) The relative strength, nature, and stability of the child's relationship with each parent;

(ii) The agreements of the parties, provided they were entered into knowingly and voluntarily;

(iii) Each parent's past and potential for future performance of parenting functions ... including whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child;

(iv) The emotional needs and developmental level of the child;

(v) The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;

(vi) The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and

(vii) Each parent's employment schedule, and shall make accommodations consistent with those schedules.

consider the required factors in determining that LaVoi should be L.L.'s primary residential parent:

a.  Jonathan LaVoi has a strong relationship with [L.L.]. Although Kyla Estes' failure to allow regular and consistent contact between Jonathan LaVoi and the child may have delayed their ability to have such a relationship, significant testimony established that Jonathan LaVoi and child have a strong, stable, bonded relationship at this time.

b.  Ms. Estes has a loving relationship with her son; however she has no acknowledgment that her actions potentially have had a detrimental impact on her child.

c.  The parties do not have any agreements regarding parenting of the child.

d.  Jonathan LaVoi is capable of and has demonstrated his ability to perform the parenting functions.

e.  Kyla Estes has demonstrated an inability to perform certain key parenting functions, such as assisting the child to develop and maintain appropriate interpersonal relationships, and exercising appropriate judgment regarding the child's welfare. The court does not find that she would physically harm her child but rather that she fails to recognize that her actions have potentially harmed her child emotionally.

f.  The emotional needs and development level of the child requires that the child be placed in the primary care of Jonathan LaVoi, who has demonstrated that he is capable of providing a loving and stable environment for the child.

g.  The emotional needs and developmental level of the child requires that Kyla Estes engage in the court ordered psychological evaluation. Lisa Barton, the guardian ad litem, recommended the psychological evaluation because without it, the court would be unable to determine whether Kyla Estes has mental health issues and whether she would continue to create conflict.

h. The emotional needs and developmental level of the child requires that Kyla Estes have supervised visitation pending the psychological evaluation and the successful completion of its recommendations to ensure that Kyla Estes does not continue to interfere with the child's emotional needs, such as a regular and consistent relationship with Jonathan LaVoi, and the absence of conflict.

i. Jonathan LaVoi has surrounded himself with a suitable, stable and appropriate support system of friends and family with whom the child is developing positive relationships.

j. The court is concerned about the child's relationship with the maternal grandparents and uncle based on their individual behavior and their assistance of Kyla Estes's willful and blatant violation of court orders, as well as their participation, engagement and initiation of hostile behavior and conflict.

k. Jonathan LaVoi has demonstrated a desire and ability to have a positive, consistent, stable relationship with the child. The court finds credible Jonathan LaVoi's testimony that he wants the child to have a relationship with the mother. The court finds credible Jonathan LaVoi's testimony that he will not interfere with or violate court orders regarding Kyla Estes' visitation with the child. Jonathan LaVoi has not engaged in any behavior throughout the litigation which indicates otherwise.

l. The court finds that Kyla Estes has demonstrated no desire or ability to ensure that Jonathan LaVoi and child have a consistent, positive, stable relationship.

    1) Kyla Estes has engaged in the abusive use of conflict.

    2) Kyla Estes has violated multiple court orders, including multiple missed visits and a blatant violation of the court's September 26, 2013 transference of custody order for seven days.

    3) The court does not find Kyla Estes' testimony that she will not violate future orders credible.

m. The only evidence the court has regarding either party's employment is Jonathan LaVoi's testimony about his employment. Jonathan LaVoi has a full time job, but has flexible hours regarding when he goes into work and leaves work each day.

n. Kyla Estes testified that she has a business license and a job that allows her to be at home with the child during the day, however, she provided no evidence or testimony as to what her job is, how

much it pays, and whether it is sufficient to support the child financially. The court finds that based on Kyla Estes' claims of "poverty," she is voluntarily unemployed.

CP at 1169-70. Estes does not challenge any of the findings of fact and we therefore treat them as verities on appeal. See In re Marriage of Brewer, 137 Wn.2d 756, 766, 976 P.2d 102 (1999).

Estes claims that the trial court erred in restricting her contact with L.L. based on her abusive use of conflict and withholding of L.L. from LaVoi. She argues that the trial court was instead obligated to restrict LaVoi's contact with L.L. because LaVoi engaged in acts of domestic violence against her. A trial court may limit a parent's residential time with a child if the parent engages in the "abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development" or "has withheld from the other parent access to the child for a protracted period without good cause." RCW 26.09.191(3)(e)(f). A trial court must limit a parent's residential time with a child if the parent has a history of acts of domestic violence. RCW 26.09.191(2)(iii).

Again, the trial court made thorough and comprehensive findings regarding Estes's abusive use of conflict, based on Estes's frequent violation of court orders regarding visitation, false allegations of abuse and neglect, and harassment of LaVoi, his friends, his attorneys and the GAL. The trial court also found that Estes had allowed L.L. to witness her behavior and that it had a detrimental effect on his well-being. Again, Estes does not challenge these findings and we treat them as verities. The trial court also found that Estes's claims of domestic violence were

8

not credible. The unchallenged findings support the trial court's limitation of Estes's contact with L.L.

Estes argues that the trial court erred in limiting her visitation with L.L. to eight hours per week. The basis for Estes's claim appears to be that, following the entry of the trial court's order, she has had unspecified difficulties scheduling visits with LaVoi and the court-appointed visitation supervisor. This does not establish that the trial court abused its discretion.

Estes argues that the trial court erred in allowing LaVoi to take L.L. on an out-of-state vacation without notifying her in advance as required by the parenting plan. Because the vacation is alleged to have taken place after the trial, this claim concerns matters outside the record. We consider only evidence that was before the trial court at the time a decision was made. See RAP 9.1; 9.11. While we recognize that Estes has filed her briefs pro se, pro se litigants are held to the same standards as attorneys and must comply with all procedural rules on appeal. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993).

Estes contends the trial court erred in finding that she refused to undergo the court-ordered psychological evaluation. She claims that she has had multiple psychological evaluations and provided documentation to the trial court. Estes does not cite to the trial court record but instead urges this court to consider two documents she has attached to her brief. Because it is clear from the dates that these documents were created after the trial, they were not part of the trial court record and we will not consider them.

Estes argues the trial court erred in failing to require LaVoi to establish paternity. But the trial court found that LaVoi and Estes both signed an acknowledgment of paternity alleging that LaVoi was the father of L.L. Estes does not challenge this finding. An acknowledgement of paternity "is equivalent to an adjudication of parentage of a child and confers upon the acknowledged father all the rights and duties of a parent." RCW 26.26.320(1).

Estes claims that the trial court erred in permitting LaVoi to question her regarding bar grievances she had filed against his attorneys. She contends the trial court should have sustained her objection to the question as irrelevant. But Estes's actions were relevant to whether she had engaged in abusive use of conflict. Estes also claims the trial court erred in permitting LaVoi to "berate and victimize" her during closing argument. Br. of App. at 11. Because this was a bench trial, we presume that the trial court based its decision solely on admissible evidence. Crosetto v. Crosetto, 65 Wn.2d 366, 368, 397 P.2d 418 (1964).

Estes challenges the trial court's award of attorney fees to LaVoi, arguing that the trial court did not adequately consider her ability to pay. We review a trial court's decision on attorney fees for abuse of discretion. In re Marriage of Burke, 96 Wn. App. 474, 476, 980 P.2d 265 (1999). Here, the trial court awarded LaVoi $10,000 in attorney fees due to Estes's intransigence and filing of frivolous motions. The trial court made detailed findings in support of its award:

> The court finds that a judgment should be entered against Kyla Estes in favor of Jonathan LaVoi in the amount of $10,000.00 for attorney fees. The court finds that Kyla Estes' intransigence and filing of

10

frivolous motions has unreasonably and unnecessarily increased Jonathan LaVoi's attorney fees. The court finds it is reasonable for Kyla Estes to be responsible for a portion of Jonathan LaVoi's legal fees.

1.    As of October 14, 2013, Jonathan LaVoi had incurred $57,246.66 in attorney fees. It is reasonable to find that those fees increased during the week of October 14, 2013 for trial preparation, and during the week of October 21, 2013, during the trial.

2.    Due to Kyla Estes's intransigence and blatant violation of court orders, Jonathan LaVoi had to file two motions for contempt. Both motions for contempt were granted. Both orders of contempt were upheld on revision.

3.    Kyla Estes filed at least two frivolous motions – her motion to vacate pursuant to CR 60 and her motion to remove the guardian ad litem. Both motions were denied. As a result of her frivolous motions, Kyla Estes was found to have violated CR 11. The denial of her motions was upheld on revision.

4.    Kyla Estes also sought a trial de novo and refused to agree to dismiss it, even after being notified by two judicial officers that it was inappropriate. As a result, Jonathan LaVoi incurred attorney fees in moving to have the trial de novo dismissed.

5.    Jonathan LaVoi incurred substantial attorney fees between September 26, 2013, when the court granted him temporary custody, and October 3, 2013, when Kyla Estes returned the child. As a result of Kyla Estes' custodial interference, two additional hearings had to be held. Had Kyla Estes returned the child on the 26th of September, these two hearings would have been unnecessary.

6.    Jonathan LaVoi has been awarded $3,000.00 in attorney fees and a $200 civil penalty in the orders for contempt. He was awarded $1,500.00 in attorney fees on the court's motion in finding that Kyla Estes had violated CR 11. He was awarded $500.00 in the court's order dismissing Kyla Estes' request for a trial de novo. Kyla Estes has not paid on any of the judgments. The award of fees Jonathan LaVoi has already received does not compensate him for the fees he has incurred as a result of Kyla Estes' frivolous motions and intransigence.

7.    The court finds that the additional award of $10,000.00 in attorney fees to Jonathan LaVoi is reasonable.

CP at 1181-82. Estes does not challenge these findings. Furthermore, if a trial court awards fees on the basis of intransigence, the financial ability of the party to pay the fees is not relevant. In re Marriage of Mattson, 95 Wn. App. 592, 604, 976 P.2d 157 (1999).

Estes also contends the trial court erred in ordering her to pay child support, claiming she does not have the financial resources to do so. We review a child support order for abuse of discretion. In re Marriage of Bell, 101 Wn. App. 366, 371-72, 4 P.3d 849 (2000). "This court will not substitute its own judgment for that of the trial court where the record shows that the trial court considered all relevant factors and the award is not unreasonable under the circumstances." In re Marriage of Fiorito, 112 Wn. App. 657, 664, 50 P.3d 298 (2002). A court will impute income to a parent for purposes of child support when the parent is voluntarily unemployed or underemployed. RCW 26.19.071(6). "The court shall determine whether the parent is voluntarily underemployed or voluntarily unemployed based upon that parent's work history, education, health, and age, or any other relevant factors." RCW 26.19.071(6).

The trial court found that Estes had "failed to find meaningful and gainful employment in order to support herself and the child" and that she had not complied with a previous order to search for at least ten jobs a week. The trial court found that there was "no evidence that she has actively sought reasonable employment, or that she is employed." CP at1180. The trial court found that Estes was voluntarily unemployed. Though Estes challenges this finding, Estes

12

does not identify any evidence in the record from which the trial court could have found otherwise. And though Estes claims that the trial court refused to consider financial documentation that she provided, she provides no citation to the record in support of this claim. Estes fails to demonstrate any abuse of discretion in the child support order.

Finally, Estes claims the trial court should not have required her to pay the cost of visit supervision, citing her inability to pay. But Estes does not challenge the trial court's finding that supervision was warranted. Moreover, the trial court's finding that Estes was refusing to look for employment was supported by the evidence. As a result, Estes does not demonstrate that the trial court abused its discretion in obligating her to pay the cost of visit supervision.

We affirm all of the challenged orders.

_Spearman, C.J._

WE CONCUR:

_Trickey, J_

_____