[Nos. 13854-2-III;   Division Three.   January 4, 1996.]
13865-8-III.

*In the Matter of the Marriage of* JUDITH LYN RICH, *Appellant, and* BRAD ALAN RICH, ET AL., *Respondents.*

*In the Matter of the Dependency of* B. R.

JUDITH LYN RICH, *Appellant,* v. BRAD ALAN RICH, ET AL., *Respondents.*

*J. Jarrette Sandlin* and *Sandlin Law Firm,* for appellant.

*Deforest N. Fuller* and *Fuller & Associates,* for respondents.

SWEENEY, C.J. — In *In re Perry*, 31 Wn. App. 604, 608, 644 P.2d 142 (1982), we concluded that the Legislature intended that matters of dependency be "handled exclusively and originally by the juvenile court and that the superior court defer determination of custody as between the parents in a dissolution proceeding until the juvenile court has made a determination of the dependency matter." In these linked appeals, we are asked to revisit our holding in *Perry* in a different factual setting.

On November 26, 1991, Judith Rich filed an action in Douglas County to dissolve her marriage with Brad Rich. A decree of dissolution was entered on July 20, 1992. Because Ms. Rich alleged child abuse by her husband, the court restricted the father's visitation with the child. The visitation schedule started with a minimum of one hour every other week and increased gradually to longer overnight visits. An order entered on June 22, 1992, provided visitation for the paternal grandparents, Ed and Georgia Rich.

In March 1993, Ms. Rich moved for reconsideration to decide whether the paternal grandparents should have visitation rights and to clarify the parenting plan. Mr. Rich and the paternal grandparents moved to expand visitation. Following a four-day hearing during which the court heard from a psychologist, counselors, the parents and the grandparents, the court expanded the visitation rights of Mr. Rich and the paternal grandparents. It also retained jurisdiction over the parenting plan to consider future issues regarding the visitation rights of the father and the paternal grandparents. The court entered the order on June 14, 1993.

On October 11, 1993, Mr. Rich moved to have Ms. Rich held in contempt because she refused to comply with the court's order allowing visitation. It is not clear from the record, but apparently on October 19, the court dismissed his contempt motion and appointed a limited guardian ad litem.

On October 15, 1993, Ms. Rich, through her new attorney, J. Jarrette Sandlin, filed a dependency action in Yakima County Juvenile Court and obtained an ex parte temporary order restraining Mr. Rich and his parents from contacting the child. Ten days later, Mr. Rich moved in Yakima County Juvenile Court to quash the restraining order and dismiss the dependency action. The evidence at the hearing on his motion was much the same as that presented to the Douglas County Superior Court on April 2, April 15, and May 26-27, 1993.

On October 29, 1993, the Yakima County Juvenile Court Commissioner quashed the restraining order and dismissed the dependency action. At the hearing, the Washington State Attorney General's Office said it would file a motion for CR 11 sanctions for "blatant forum shopping" by Mr. Sandlin.

Procedurally, the next move occurred in Douglas County. On December 3, the Douglas County Superior Court heard extensive testimony from both expert and lay witnesses, including the parties, pursuant to its order of June 14, 1993 (retaining jurisdiction to consider future developments regarding the parenting plan). A formal order dismissing the dependency action was entered in Yakima County on December 14, 1993. The Yakima County Juvenile Court Commissioner later imposed $1,500 sanctions—$750 to the paternal grandparents and $750 to Mr. Rich. Ms. Rich moved for revision of the Commissioner's order. On January 18, 1994, a Yakima County Superior Court Judge refused to revise the Commissioner's decision. On January 28, 1994, the Douglas County Superior Court entered a final parenting plan increasing the visitation rights of Mr. Rich and the paternal grandparents.

Ms. Rich filed two appeals which were linked by the clerk of this court. We have consolidated the appeals for purposes of this opinion. RAP 3.3(b) (allowing consolidation of appeals on court's own initiative). The first challenges the dismissal of the dependency action by the Yakima County Juvenile Court. The second challenges the parenting plan entered by the Douglas County Superior Court and the propriety of holding an evidentiary hearing while the Yakima County dependency action was pending.

## Discussion

■ We begin our analysis by noting that a juvenile court has exclusive original jurisdiction over all proceedings "[r]elating to children alleged or found to be dependent . . . ." Former RCW 13.04.030(2). Jurisdiction continues, however, only until the dependency action is terminated or a determination is made that the child is no longer dependent. *In re Boatman*, 73 Wn.2d 364, 367, 438 P.2d 600 (1968).

Ms. Rich relies on our holding in *Perry* for her position that the Douglas County Superior Court had no jurisdiction to hold the December 3, 1993, evidentiary hearing. Her reliance is misplaced.

The issue in *Perry* was "whether the Superior Court had the authority to proceed with the modification proceeding while a dependency action involving the child was pending in juvenile court." *Perry*, 31 Wn. App. at 605. Here, the Douglas County Superior Court entered the final parenting plan only after the Yakima County Juvenile Court Commissioner had dismissed the dependency action and the Yakima County Superior Court had refused to revise the Commissioner's order. No jurisdictional conflict existed then at the time the Douglas County Superior Court entered the final parenting plan.

Ms. Rich next contends that the Yakima County Juvenile Court erroneously dismissed her dependency proceeding. She again relies on *Perry*. Again, *Perry* is distinguish-

able. In *Perry*, the mother had custody. Based on the conduct of the mother, the juvenile court found the child to be dependent and changed custody to the father. *Perry*, 31 Wn. App. at 608. The juvenile court then transferred the matter to superior court for resolution of the father's petition to modify custody in the dissolution decree. When the petition to modify was granted, changing custody of the child from the mother to the father, the juvenile court then dismissed the dependency proceeding. We approved of that procedure, noting that "it is apparent the juvenile court transferred the matter to superior court for determination of the petition to modify so that in the event legal custody were granted to the father, the dependency could be terminated. We find the superior court had authority to proceed with Mr. Perry's petition to modify [despite the pending dependency action]." *Perry*, 31 Wn. App. at 608.

██ Here, custody remained with Ms. Rich. But the allegations of abuse relate to Mr. Rich. He has never had custody. The Yakima County Juvenile Court Commissioner, accordingly, properly dismissed the dependency action because there were no allegations of abuse or neglect against the person legally responsible for the child's care— Ms. Rich. Former RCW 13.34.030(2)(b), now RCW 13.34-.030(4) (a dependent child is one "[w]ho is abused or neglected as defined in chapter 26.44 RCW by a person legally responsible for the care of the child").

Sanctions. Ms. Rich complains that sanctions were improper because there was neither a formal motion filed for CR 11 sanctions nor notice. *Biggs v. Vail*, 124 Wn.2d 193, 198 n.2, 876 P.2d 448 (1994) (due process requires at least some sort of informal notice to counsel before CR 11 sanctions may be assessed). She is mistaken. During the hearing on October 29, 1993, Mr. Sandlin was advised by the Assistant Attorney General that he would seek CR 11 sanctions if the dependency action was dismissed. The Commissioner also commented that she would consider CR 11 sanctions. CR 11 sanctions were not argued until December 8, 1993. Mr. Rich also filed and served on Mr.

Sandlin a notice of his intention to seek CR 11 sanctions. Mr. Sandlin did not appear despite the court's offer to permit him to appear telephonically at the scheduled hearing.

■ Ms. Rich next argues that sanctions were inappropriate because the dependency petition was neither baseless nor an abuse of the judicial system. *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 219, 829 P.2d 1099 (1992) (the fundamental reasons for CR 11 are to deter baseless filings and to curb abuses of the judicial system). We disagree. The standard of review is abuse of discretion. *Cooper v. Viking Ventures*, 53 Wn. App. 739, 742-43, 770 P.2d 659 (1989). We will not reverse an award of sanctions absent a clear showing of abuse. *Clarke v. Equinox Holdings, Ltd.*, 56 Wn. App. 125, 132, 783 P.2d 82, *review denied*, 113 Wn.2d 1001 (1989).

■ A dependency action is not an adjunct to a dissolution proceeding. It is not an additional procedural avenue down which a disgruntled dissolution litigant can march if he or she is dissatisfied with the trial court's disposition on custody and visitation disputes. A dependency action should not be used to thwart the lawful orders of a superior court in a dissolution action on matters of visitation. We agree with the Yakima County Juvenile Court Commissioner: this was an abuse of the dependency statutes.

■ Visitation. Finally, Ms. Rich challenges the Douglas County Superior Court's ruling allowing visitation with Mr. Rich and his parents. Trial courts are given broad discretion in matters concerning children. *In re Cabalquinto*, 100 Wn.2d 325, 327, 669 P.2d 886 (1983). We will not overturn a trial court's rulings on questions of visitation absent an abuse of discretion. *Cabalquinto*, 100 Wn.2d at 327.

■ Ms. Rich's argument here is that the trial court ignored the opinions of her witnesses regarding the need for supervised visitation, further testing and evaluation,

and videotaped visitation. Our role or function is not to substitute our judgment for that of the trial court or to weigh the evidence or credibility of witnesses. *In re Sedlock*, 69 Wn. App. 484, 491, 849 P.2d 1243, *review denied*, 122 Wn.2d 1014 (1993).

Ms. Rich argues that the court gave insufficient weight to some witnesses and too much weight to others. We disagree. After each hearing, the court discussed the weight it gave to the testimony of each witness and its reasons for rejecting or ignoring the recommendations of Ms. Rich's experts. These rulings and the reasons therefore are amply supported by the record. In fact, the court set out specific reasons in detail in its findings. *Sedlock*, 69 Wn. App. at 491 ("The factfinder is given wide latitude in the weight to give expert opinion. . . . [T]hat we may disagree with its reasoning[ ] does not change the result. To rule otherwise would be to place the appellate courts in the position of *weighing* expert testimony, a position we decline to take.").

The decisions of both the Yakima County Juvenile Court and the Douglas County Superior Court are affirmed.

THOMPSON and SCHULTHEIS, JJ., concur.

Reconsideration denied February 28, 1996.

Review denied at 129 Wn.2d 1030, 1031 (1996).