IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Parenting and Support of: | ) | No. 30687-9-III |
| | ) | |
| AUTUMN KERN, | ) | |
| | ) | |
| LISA JAMESON, | ) | |
| | ) | |
| Respondent, | ) | UNPUBLISHED OPINION |
| | ) | |
| and | ) | |
| | ) | |
| DERRICK KERN, | ) | |
| | ) | |
| Appellant. | ) | |

KULIK, J. — When creating a residential schedule, a trial court considers seven

statutory factors, which include the parents' work schedules. RCW 26.09.187(3)(a). The

trial court here rejected Derrick Kern's proposed residential schedule for his daughter,

Autumn. The court ordered a more traditional schedule and provided that Mr. Kern could

have a three-day visit every month if he used paid time off to accommodate it. On appeal,

Mr. Kern argues the court abused its discretion by failing to consider the seven statutory

factors and by requiring him to use his paid days off for additional visitation. We

conclude that the trial court did not abuse its broad discretion, and we affirm the court's

order.

## FACTS

Lisa Jameson and Derrick Kern have a daughter, Autumn, born in 2005. Ms. Jameson and Mr. Kern never married. They had an "on-again/off-again" relationship for several years and broke up for good in early 2010. Report of Proceedings (RP) at 15.

In the summer of 2010, Ms. Jameson petitioned for a final parenting plan in which she was the primary residential parent. Before trial, Mr. Kern indicated that he wanted to be the primary residential parent. However, he agreed at trial that Ms. Jameson should be the primary residential parent.

*A. Evidence at Trial*

At trial, the parties presented evidence on the seven statutory factors that the trial court must consider when deciding residential provisions.[1] They presented the following evidence on each factor:

1.  <u>The agreements of the parties, provided they were entered into knowingly and voluntarily</u>

Both parents testified that they had been unable to agree on any provisions of a final parenting plan.

2.    Each parent's employment schedule

Mr. Kern testified that he worked full time as a firefighter. He worked only nine days per month. He worked those days in 24 hour shifts, followed by 48 hours off, in a cycle that repeated itself every three weeks.

In addition to his regular days off, he had three weeks of vacation and 13 "Kelly days" per year. Kelly days are paid days off. He testified that he was not proposing that the court use the Kelly days in the residential schedule, but that he was willing to use those days to make himself available for Autumn. He also testified that he could trade days off with co-workers.

Ms. Jameson testified that she worked full time, but had a flexible schedule. She could usually come and go from her work freely and could work from home.

3.    The wishes of the parents

Mr. Kern proposed a schedule based on their temporary residential schedule at the time of trial. Both schedules divided residential time nearly equally and were based on Mr. Kern's work schedule. The proposed schedule followed a three-week rotation that paralleled Mr. Kern's work schedule, which meant that Mr. Kern would not see Autumn on the same days every week.

---

[1] *See* RCW 26.09.187.

In the temporary schedule, there was also a time every month when Autumn did not see Mr. Kern for an entire week. His proposed schedule broke up that week with an additional visit. It also required the parties to exchange Autumn as many as 16 times per month.

Ms. Jameson proposed a schedule that gave Mr. Kern one overnight visit and one evening visit each week. She testified that they used that schedule sometime between August 2008 and July 2009 and that it worked well.

4.     The emotional needs and developmental level of the child

At the time of trial, Autumn was several months from beginning kindergarten. The parties disputed how well she had adjusted to the current residential schedule.

Mr. Kern testified that Autumn had adapted well to the schedule and that she liked going back and forth between two homes. He also stated that the only problem with the current schedule was that, just prior to the seven-day absence from him, Autumn would become withdrawn and resistant to going to preschool. His girl friend, who he has since married, Amanda Kern, testified that Autumn understood her schedule.

Ms. Jameson testified that the current schedule was not working well for Autumn. She explained that Autumn did not know where she would be or who she would be with from day to day. She also testified that, when Autumn would return from a long visit

4

with Mr. Kern, she was tired and cranky. As a result, Ms. Jameson avoided planning any activities for the days when Autumn returned from Mr. Kern's house. Ms. Jameson was also concerned that this would impact Autumn's learning when kindergarten started.

5. <u>Each parent's past and potential for future performance of parenting functions, including whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child</u>

Evidence showed both parents had performed parenting functions in the past and could continue to perform them in the future.

Mr. Kern testified that he was Autumn's primary caregiver when she was an infant and that he continued to do laundry, cook, and clean for Autumn. He also picked up and dropped off Autumn at preschool regularly.

Ms. Jameson testified that she took Autumn to doctor, dentist, and haircut appointments. She also testified that she dropped off and picked up Autumn at preschool regularly.

6. <u>The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities</u>

Ms. Jameson testified that Autumn has a good relationship with two older half-siblings from Ms. Jameson's prior marriage. Although her adult half-brother used drugs in the past, Ms. Jameson testified that he no longer used drugs currently and that she

would not tolerate drug use while he lived in her home. Ms. Jameson also testified that Mr. Kern's mother lived nearby. Autumn visited her grandmother several times per week.

Mr. Kern testified that he lives about 2.5 miles from Ms. Jameson. His father lived with him and that his mother lived about one block away. Amanda Kern testified that she usually saw Autumn every day that Autumn was with Mr. Kern. Amanda Kern testified that she had two children, but did not indicate whether they had a relationship with Autumn.

7.     The relative strength, nature, and stability of the child's relationship with each parent

There was no dispute that Autumn had a strong and stable relationship with both parents.

*B. The Court's Ruling*

The trial court found that "Autumn seems to be doing pretty well. She is not a messed up kid by any means, at least as far as I can tell." Clerk's Papers (CP) at 231. The court then explained that its goal was to create a schedule that will work for Autumn and the parties for the next 13 years. It explained that, "I try to apply in these cases, within the boundaries of the applicable statutory framework, . . . to come up with a plan which is, above all, practical, realistic, [and] predictable." CP at 234.

The court then commented on the parents' work schedules and created a schedule based on those. The trial court noted that Mr. Kern typically has two weekends off every month and most Wednesdays off. It then awarded Mr. Kern residential time two weekends per month and an overnight visit every Wednesday. The court also ruled that Mr. Kern could have visitation from Friday to Sunday or Saturday to Monday once per month if he used a Kelly day for an additional day off. The court noted that the day of the mid-week visit could change if Mr. Kern's work schedule changed. The court also awarded each parent two weeks of vacation with Autumn. The court did not file written findings of fact.

Mr. Kern moved for reconsideration and the trial court denied the motion. Mr. Kern appeals.

## ANALYSIS

*Review of Findings.* Ms. Jameson argues that the trial court should be affirmed because it did not abuse its discretion when it denied Mr. Kern's motion for reconsideration. From Mr. Kern's brief, however, it is clear that he seeks review of the findings underlying the final parenting plan rather than the order denying his motion for reconsideration.

Ms. Jameson also argues that Mr. Kern did not file his appeal until more than 30

7

days after the court entered its findings. According to Ms. Jameson, Mr. Kern has not timely appealed the findings.

Designating an order on a motion for reconsideration brings up the final judgment for review. RAP 2.4(c). Additionally, appeal of a final judgment is timely if the appellant appeals within 30 days of entry of an order on a motion for reconsideration. RAP 5.2(e). Therefore, Mr. Kern has timely filed an appeal of the findings underlying the final parenting plan.

*Statutory Factors.* We review the court's ruling on a residential schedule for an abuse of discretion. *In re Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993). A court abuses its discretion when it bases its decision on untenable grounds or reasons. *Id.*

When a court determines a child's residential schedule, the court must consider the child's best interest. *See* RCW 26.09.002. When the child's best interest does not require that one parent's residential time is limited, the court must consider seven statutory factors. RCW 26.09.187(3)(a). Those factors are:

(i)    The relative strength, nature, and stability of the child's relationship with each parent;

(ii)   The agreements of the parties, provided they were entered into knowingly and voluntarily;

(iii)  Each parent's past and potential for future performance of parenting functions as defined in . . . RCW 26.09.004(3), including whether a

parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child;

(iv)   The emotional needs and developmental level of the child;

(v)    The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;

(vi)   The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and

(vii)  Each parent's employment schedule, and shall make accommodations consistent with those schedules.

RCW 26.09.187(3)(a). The first factor should be given the most weight. *Id.*

Here, there are no written findings regarding these factors. Mr. Kern argues that the record is, therefore, absent any showing that the trial court considered the factors. Ms. Jameson replies that there is substantial evidence to support each factor, so we should assume that the trial court considered the factors.

When the parties present substantial evidence on each factor, findings specific to each factor are not required and this court may rely on the trial court's oral opinion. *In re Marriage of Croley*, 91 Wn.2d 288, 292, 588 P.2d 738 (1978); *In re Marriage of Murray*, 28 Wn. App. 187, 189, 622 P.2d 1288 (1981). Absent evidence to the contrary, this court assumes that the court considered the evidence presented. *Croley*, 91 Wn.2d at 291. Stated differently, "the failure of the written findings or oral opinion to reflect any application of the statutory elements or to even mention the best interests of the child"

9

rebuts the presumption that the trial court considered the statutory factors. *Murray*, 28 Wn. App. at 189-90.

Here, the parties presented substantial evidence on each factor and court's oral ruling suggested that it considered each factor. As noted, the court stated, "my personal standard that I try to apply in these cases, *within the boundaries of the applicable statutory framework*, is to try to come up with a plan which is, above all, practical, realistic, [and] predictable." CP at 234 (emphasis added). It went on to say, "I think that we can come up with something here which is probably . . . not what either side would ideally like to have but at least . . . *serves the needs of satisfying the statute* and also being practical and predictable." CP at 237 (emphasis added). A more detailed ruling would have been helpful, but the court's comments indicate that it considered the statutory framework and satisfied the statutes. This court, therefore, concludes that the trial court considered the evidence presented and complied with the relevant statutes.

*Abuse of Discretion.* Mr. Kern next contends that the decision to reduce his residential time was contrary to the evidence and was not in Autumn's best interest. Essentially, Mr. Kern argues that the court incorrectly weighed the evidence at trial. However, this court will not substitute its judgment for that of the trial court by reweighing the evidence. *In re Marriage of Rich*, 80 Wn. App. 252, 259, 907 P.2d 1234

10

(1996).

The trial court did not err by assigning more weight to Ms. Jameson's testimony. She testified that the schedule made Autumn confused, tired, and cranky. Amanda Kern testified that, to the contrary, Autumn understood her schedule and was well adjusted. Mr. Kern also testified that the current schedule was problematic, not because it confused Autumn, but because it created too much time away from him. While either version of the facts is possible, the court was entitled to accept Ms. Jameson's testimony over the Kerns' testimony.

Because the court considered the relevant law and evidence, we cannot say that its decision was against Autumn's best interest. Although the schedule reduced Mr. Kern's residential time, it created a workable schedule. The court did not abuse its discretion.

*"Kelly Days."* Finally, Mr. Kern argues that the court abused its discretion by requiring him to use his Kelly days to have a three-day weekend with Autumn once per month. He contends that the requirement that he use a Kelly day is arbitrary and that he should be able to use any type of leave available to him. He also contends that this requirement infringes on his right to take a two-week vacation with Autumn. He reasons that, because he must save his Kelly days for three-day weekends, he will have to use annual leave to make himself available for his regular visits, and he will therefore have

little annual leave to use for an actual vacation.

The trial court was required to consider each parent's employment schedule and make accommodations for that schedule. RCW 26.09.187(3)(a)(vii). If the trial court considered Mr. Kern's schedule and made accommodations for it, it did not abuse its discretion. *See Kovacs*, 121 Wn.2d at 801 (a court abuses its discretion when it bases a decision on untenable grounds or reasons).

The court's ruling shows that it considered Mr. Kern's schedule and accommodated it. The evidence showed that Mr. Kern has 13 Kelly days each year and three weeks of annual leave. Mr. Kern testified that, although he was not proposing that the Kelly days be used in the residential schedule, he could use them to make himself available to Autumn. He also testified that he could use the Kelly days any time. The trial court noted that Mr. Kern typically has two weekends off every month and most Wednesdays off. Based on that, the court scheduled Mr. Kern to have visits with Autumn two weekends per month and every Wednesday. Requiring Mr. Kern to use his Kelly days for visitation was not an abuse of discretion.

*Attorney Fees.* Ms. Jameson asks for attorney fees on the basis of Mr. Kern's intransigence and RAP 18.9. RAP 18.9(a) allows for an award of fees for a party's

intentional delay, misuse of the rules, or frivolous appeal. The record does not support an award on either basis.

Ms. Jameson also seeks attorney fees pursuant to RCW 26.09.140. RCW 26.09.140 provides that this court may award reasonable attorney fees after considering the financial resources of the parties. Both parties have filed financial affidavits pursuant to RAP 18.1(c). After considering those, we award Ms. Jameson attorney fees on appeal.

We affirm the trial court's order.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Kulik, J.

WE CONCUR:

Brown, J.

Korsmo, C.J.

13