

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In re the Matter of the Marriage of: | ) | NO. 72209-3-I |
| | ) | |
| DAVID A. CULLEN, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| and | ) | |
| | ) | UNPUBLISHED OPINION |
| ERIN A. CULLEN, | ) | |
| | ) | |
| Appellant. | ) | FILED: August 3, 2015 |
| | ) | |

LAU, J. — Erin Cullen appeals a parenting plan that imposes a two week alternating residential schedule for the children. She argues the trial court abused its discretion by (1) failing to restrict David's residential time after finding David exhibited a history of domestic violence and (2) declining to impose a restraining order against David.[1] We conclude the trial court's unchallenged findings of fact support its conclusions that (1) residential limitations would not be in the children's best interests and the threat to the children is remote, and (2) David's conduct required no restraining order. We affirm.

---

[1] We use the parties' first name for clarity.

FACTS

In April 2013, Erin Cullen filed a petition to dissolve her 12-year marriage to David Cullen. Erin and David have three children—Aiden (age 12), Nathan (age 10), and Clare (age 7). Shortly after filing for divorce, Erin also obtained an ex parte restraining order against David due to a history of abuse.[2] A series of restraining orders prevented David from seeing the children until the trial court implemented a temporary parenting plan on May 9, 2013, allowing David unsupervised visitation every Wednesday evening and every other weekend. The restraining orders remained in effect outside of David's residential time until May 29, when the parties agreed David could attend the children's extracurricular activities while Erin was not present. In December 2013, Erin and David agreed to appoint a guardian ad litem (GAL) to prepare a report on the children's best interests before trial.

During a two-day dissolution trial in April 2014, the trial court considered testimony from seven witnesses and dozens of exhibits. The trial court found that David engaged in a history of domestic violence for purposes of RCW 26.09.191. Generally, this would trigger limitations on David's residential time with the children. See RCW 26.09.191(2)(a) ("The parent's residential time with the child shall be limited if it is found that the parent has engaged in any of the following conduct: . . . (iii) a history of acts of domestic violence . . . ."). But the trial court declined to impose any limitation on David's residential time for several reasons. First, the trial court concluded David's misconduct primarily affected Erin, not the children:

_____

[2] For example, Erin's father submitted a declaration describing a 2011 incident during which David yelled obscenities at Erin and shoved her to the ground in front of their three children.

-2-

> And to be clear, for the record, I do find that there is both a history of acts of domestic violence and there have also been episodes of abuse of the children in terms of demeaning comments and a few occasions of physical mistreatment. I did not find that the conduct toward the children amounted to a pattern of such abuse. The domestic violence toward the wife does present a history of mistreatment.

Report of Proceedings (RP) (April 16, 2014) at 15. Second, the trial court noted that David "recognized his domestic violence issues and history, and [was] addressing that behavior . . . appropriately" by engaging in domestic violence treatment. RP (April 16, 2014) at 16. Finally, the trial court noted that over a year had passed since the last alleged incident of abuse towards the children. Due to the remote nature of the risk, the trial court concluded there was no need to limit David's residential time:

> I don't find from the evidence at trial now over a year after any of that domestic violence that there is any likelihood that his contact with the children or his residential time with them will lead to any physical, sexual, or emotional abuse or harm to any of the children. Whatever risk remains for that sort of adverse consequence to the children, in my judgment, is so remote that it is not in the best interests of the children to impose those restrictions on the husband's residential time with the children.
>
> I may be wrong, but that's my best assessment today having heard all of the testimony and reviewing the guardian ad litem's report. It seems consistent with the history in the relationship where the abuse was primarily directed toward the wife and not the children. So the ability of the Court to dispense with those restrictions, I find, is supported by the evidence and the authority for dispensing with those restrictions found in RCW 26.09.191(2)(n).[3]

---

[3] RCW 26.09.191(2)(n) allows a trial court to refrain from restricting a parent's residential time with a child despite a finding of a history of domestic abuse if the court concludes restrictions would not be in the child's best interests:

> If the court expressly finds based on the evidence that contact between the parent and the child will not cause physical, sexual, or emotional abuse or harm to the child and that the probability that the parent's or other person's harmful or abusive conduct will recur is so remote that it would not be in the child's best interests to apply the limitations of (a) . . . .

RCW 26.09.191(2)(n).

RP (April 16, 2014) at 16-17.

Because the trial court found limitations unnecessary, it implemented a parenting plan requiring that the parents alternate residential time with the children every two weeks during the school year. During summer vacation, the children would reside with Erin except for three weeks in July and August. The trial court noted this was contrary to the GAL's recommendation that the court maintain the current framework under the temporary parenting plan. But the trial court also incorporated nearly all of the GAL's other recommendations. For instance, the trial court included several restrictions in the parenting plan: first, Erin maintained discretion regarding major decisions for each child. Second, David's residential time with the children was contingent upon successfully completing a one year domestic violence batterer program, domestic violence dads program, and a chemical dependency evaluation and relevant treatment. Finally, in lieu of continuing the restraining order against David, the trial court ordered limitations on Erin and David's contact with each other during the children's school and extracurricular activities. The trial court also stated that if this plan was unsatisfactory, it would allow review at the end of the summer:

> But if this isn't working going forward, and there may not be enough opportunity to evaluate at the end of the school year how things have gone for the next couple of months going forward, but, if it's a disaster, I don't want to perpetuate it going into the next school year. If it's working reasonably well, then my plan is that this will be the permanent Parenting Plan going forward unless the parties agree on some other arrangement that may be more workable for them and the children. I don't want to foreclose a review of the case at the end of the summer, and I'll leave that discretion to either parent to initiate that review.

RP (April 16, 2014) at 31-32.

On August 21, 2014, Erin filed a motion to review the parenting plan and requested the court to reinstate the arrangement in the temporary parenting plan—where David had the children every other weekend and Wednesday evenings.

The trial court held a second hearing on the parenting plan in mid-November. It lasted five days and involved 13 witnesses, including the same GAL from the April trial. The court entered extensive findings and conclusions, which Erin does not challenge on appeal. Despite evidence that David had used abusive language toward Erin while the children were present on two occasions and that their oldest son, Aiden, was exhibiting "oppositional defiance" towards Erin, the trial court concluded that limiting David's residential time with the children would not be in their best interest. Clerk's Paper's (CP) at 564.

Specifically, the trial court found that the GAL's report indicated the children were doing well in school and were, in fact, "thriving" under the parenting plan with the exception of Aiden's behavior towards his mother. CP at 564. Further, the trial court found that Erin had failed to enroll Aiden in a professional intervention program despite a specific directive in its prior order after the April 2014 trial. The trial court also found that Erin's testimony lacked credibility. CP at 565. ("The mother's claim that the father's behavior towards her is negatively affecting the children emotionally is not supported by the evidence."). And, although the GAL again recommended that the court restrict David's residential time, the GAL apparently did not speak with the children or their teachers before the November hearing.

The court observed that although the parenting plan seemed to be working for the children, it was not working for the parents. Indeed, with the exception of Aiden's

-5-

behavior, most of Erin's complaints about the parenting plan arose from incidents where she and David ended up in the same place and tension ensued. For instance, evidence indicated that David used abusive language toward Erin on two instances. Erin also testified about a school picnic where both parents were present and that she believed the children were confused because they "didn't know who to please." RP (Nov. 14, 2014) at 46. She gathered the children and left "because the incident was so upsetting that [she] didn't want to cry in front of a picnic full of people." RP (Nov. 14, 2014) at 47.[4]

Because conflict arose when David and Erin were in the same place, the trial court included restrictions in the parenting plan limiting their interaction:

> 1.7    The two week alternating schedule is still in the best interests of the children. The following other changes to the parenting plan are necessary to minimize the conflict between the parents and ensure the children's best interests continue to be met:
>
> a.    Restricting a parent's presence at the children's school or educational, extracurricular, or social events to the weeks the children are with that parent; provided, however, the mother may be at the children's school for her PTA activities during her non-residential time provided she arranges her schedule so that she does not have contact with [the] father.
>
> b.    Requiring the parents to pick up the children at the commencement of their residential time at school; or, for exchanges that will need to occur away from the school by requiring the exchange to occur at a neutral location and requiring the parents to either bring or provide a third-party for the exchange.
>
> c.    Implementing a case manager to oversee all communication between the parents and requiring the parents to communicate through the case manager until the case manager believes the parents can communicate directly.

---

[4] The trial court found that Erin's overreaction to David's presence at the school picnic "escalated the situation unnecessarily." CP at 565.

-6-

      d.     Revising the method for telephone contact between the parents and the children to two phone calls per week initiated by the children at designated times for up to one hour per call.

      e.     Requiring Aiden and the Mother to engage in specific therapy (Step Up) to address their conflicted relationship.

      f.     Requiring the father to reengage in a one-year DV program and reengage in DV Dad's when eligible.

      g.     Revising the language of the parenting plan regarding medical appointments to ensure that both parents are informed of medical providers and so both parents can participate in the children's medical appointments during their own residential time.

CP at 564-65. With these new restrictions, the trial court declined to grant Erin's request to reinstate the prior parenting plan. The trial court also denied Erin's request for a domestic violence protection order, concluding that David's "use of abusive language toward the mother does not amount to an act of domestic violence against the mother as defined by RCW 26.50, and does not justify the issuance of a domestic violence protection order protecting the mother and the children from the father. The likelihood of a recurrence of the father's historical harmful or abusive conduct against the mother is still so remote that it would not be in the best interests of the children to limit their contact with the father." CP at 566.

Erin appeals the parenting plan and the trial court's denial of her request for a domestic violence protection order.

ANALYSIS

Standard of Review

We review a trial court's parenting plan for an abuse of discretion, which "occurs when a decision is manifestly unreasonable or based on untenable grounds or

untenable reasons." In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). Here, Erin failed to assign error to any of the trial courts findings of fact, so they are verities on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992). Because the trial court has the unique opportunity to observe the parties and weigh the evidence, we are extremely reluctant to disturb child placement dispositions. Murray v. Murray, 28 Wn. App. 187, 189, 622 P.2d 1288 (1981). An appellate court may not substitute its findings for those of the trial court where there is ample evidence supporting the trial court's determination. In re Marriage of Kovacs, 121 Wn.2d 795, 810, 854 P.2d 629 (1993).

### Residential Restrictions Under RCW 26.09.191(2)(a)(iii)

Erin argues the trial court erred by declining to limit David's residential time due to his alleged history of abusive behavior. But because the trial court's unchallenged findings of fact support its legal conclusions, the trial court did not abuse its discretion when it declined to restrict David's residential time with the children.

RCW 26.09.191(2)(a) provides that a "parent's residential time with the child shall be limited if it is found that the parent has engaged in . . . (iii) a history of acts of domestic violence as defined by RCW 26.50.010(1) . . . ." RCW 26.09.191(2)(a)(iii); see also RCW 26.50.010(1) ("'Domestic violence' means: (a) Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members; (b) sexual assault of one family or household member by another; or (c) stalking . . . of one family or household member by another family or household member."). Although subsection (2)(a) declares that a parent's

-8-

residential time "shall" be limited if the trial court finds a history of domestic violence, there is a relevant exception under subsection (2)(n):

> If the court expressly finds based on the evidence that contact between the parent and the child will not cause physical, sexual, or emotional abuse or harm to the child and that the probability that the parent's or other person's harmful or abusive conduct will recur is so remote that it would not be in the child's best interests to apply the limitations of . . . (b) . . . of this subsection, or if the court expressly finds that the parent's conduct did not have an impact on the child, then the court need not apply the limitations of . . . (b) . . . of this subsection.

RCW 26.09.191(2)(n). Here, the trial court made the following unchallenged findings:

> 3.3 . . . The likelihood of a recurrence of the father's historical harmful or abusive conduct against the mother is still so remote that it would not be in the best interests of the children to limit their contact with the father.
>
> 3.4 Continuing contact between the father and the children will not cause physical, sexual, or emotional abuse or harm to the children.

CP at 566. Accordingly, subsection (2)(n) authorized the trial court to refrain from restricting David's residential time despite its conclusion that David had a history of domestic violence. See CP at 566 ("The history of domestic violence by the father against the mother requires restrictions but it does not require elimination of his residential time or supervised visitation as suggested by the Guardian Ad Litem.").

Erin concedes the trial court's authority under subsection (2)(n). She nevertheless claims the trial court failed to explicitly reference subsection (2)(n) in its ruling:

> Though the court may dispense with such limitations pursuant to RCW 26.09.191(2)(n), this may only be done upon express evidence that contact between the parent and the child will not cause physical, sexual or emotional abuse or harm to the child and that the probability that the parent's harmful or abusive contact will recur is so remote that it would not be in the child's best interest to apply the limitations. Though the trial court made such express findings under subsection (n) in its ruling of April

-9-

> **16, 2014 . . . the trial court made no such findings in its ruling of November 21, 2014.**

Br. of Appellant at 22 (emphasis added).  But the trial court did make those exact findings in its ruling following the November review hearing, quoted above.  Erin's argument seems to be that the trial court failed to specifically reference the precise subsection of the statute granting it the authority to dispense with residential restrictions.  Indeed, in its ruling following the April bench trial, the trial court explicitly invoked subsection (2)(n): "So the ability of the Court to dispense with those restrictions, I find, is supported by the evidence and the authority for dispensing with those restrictions found in RCW 26.09.191(2)(n)."  RP (April 16, 2014) at 17.  There is no such reference to the statute in the trial court's November ruling.  But Erin fails to cite any authority that such an express reference is required because none exists to support her argument.  DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

There is no doubt that the trial court relied on its statutory authority under subsection (2)(n) in its November ruling.  The trial court's findings mirror the precise language of subsection (2)(n).  Compare CP at 566 (Findings 3.3, 3.4), quote above, with RCW 26.09.191(2)(n).  In April, the trial court declined to impose restrictions under subsection (2)(n).  The November hearing focused on a review of the same parenting plan implemented after the April trial.  It is obvious that the trial court's decision to leave the residential provisions intact was similarly based on its authority under subsection (2)(n), especially in light of the trial court's use of that section's language in its findings.

-10-

Erin's remaining arguments are equally unpersuasive. First, she contends the trial court ignored evidence presented to demonstrate that domestic violence can negatively affect children. She suggests that, by ignoring this evidence, the trial court failed to consider David's "past actions" and assess the risk of harm to the children. Br. of Appellant at 23. She also specifically relies on testimony from the GAL, domestic violence treatment provider Mark Adams, and therapist Seth Ellner. Although these witnesses testified to the effects of domestic violence on child development generally, none of them testified specifically to how David's behavior negatively affected Aiden, Nathan, and Clare. Further, both the GAL and Seth Ellner admitted they relied primarily on information they received from Erin regarding their opinions on David's conduct.

But regardless of the witnesses' testimony, the trial court is entitled to adopt, or not, their recommendations. Nothing in this record indicates the trial court ignored evidence. Erin's argument essentially asks this court to reevaluate the trial court's consideration of the evidence. We do not "substitute our judgment for that of the trial court or . . . weigh the evidence or credibility of witnesses." In re Marriage of Rich, 80 Wn. App. 252, 259, 907 P.2d 1234 (1996). This is particularly true where, as here, Erin failed to assign error to any of the trial court's findings entered after the April trial or the November review hearing. The trial court heard five days of testimony from 13 witnesses and made an express finding that the children were "thriving" under the parenting plan despite instances of conflict between Erin and David. CP at 564. The trial court also found that the children are "strongly . . . bonded with both parents" and that limiting either parent's residential time would be "detrimental to the welfare of the children." CP at 564. Further, the trial court explicitly found that Erin's testimony lacked

-11-

credibility. For example, the court stated, "[t]he mother's claim that the father's behavior towards her is negatively affecting the children emotionally is not supported by the evidence." CP at 565. Erin's contentions amount to argument over the weight and persuasiveness of the evidence. We decline to reweigh the evidence. It is manifestly evident from the record that the trial court carefully weighed the evidence and applied the law with the best interests of the children clearly in mind.[5]

In her reply brief, Erin clarifies that she is not asking this court to reevaluate the evidence, but instead conclude that, given the trial court's findings, it abused its discretion. She relies exclusively on one of the trial court's findings: "The father used abusive language toward the mother in the presence of the children on two separate occasions in June and August. This behavior is damaging to the children." CP at 566. Erin claims that this finding precluded the trial court from concluding that residential restrictions were not required. But Erin's reliance on this isolated finding ignores the remaining trial court's findings. These findings state the likelihood of a recurrence of any abusive conduct was so remote that it would not be in the children's best interests to limit David's residential time. The trial court's findings demonstrate it was not "untenable" for the trial court to conclude it had authority under subsection (2)(n) to dispense with residential limitations. See Katare, 175 Wn.2d at 35 (a trial court abuses its discretion "when a decision is manifestly unreasonable or based on untenable grounds or untenable reasons.").

---

[5] The trial court's thorough and meticulous findings of fact and conclusions of law are evident from this record and demonstrate the trial court's proper understanding of the statues and legal principles at issue.

-12-

Finally, Erin argues the trial court's ruling is not supported by policy or legislative intent. She claims that under RCW 29.09.002,[6] "the court's duty is to allocate parental responsibilities based on the children's best interest," Br. of Appellant at 25. Because the trial court's ruling exposes the children to potential harm, according to Erin, the trial court defied the legislature's intent. But this argument ignores the trial court's express authority to dispense with residential limitations <u>despite</u> a history of abusive acts if it finds the probability of recurrence is "remote." RCW 26.09.191(2)(n). As discussed above, the trial court concluded that the children were doing well under the parenting plan and that equal time with each parent was in their best interests.

Erin asserts that the trial court was disturbed by some of David's conduct: "[t]he father completed domestic violence treatment, but his abusive behavior persists either deliberately in seeking to bully the mother by berating her and using vulgar language or he's simply incapable of controlling himself. The result is the same. It's abusive, and it's terribly damaging to the children. It is the example that he is setting for his children

---

[6] "Parents have the responsibility to make decisions and perform other parental functions necessary for the care and growth of their minor children. In any proceeding between parents under this chapter, the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities. The state recognizes the fundamental importance of the parent-child relationship to the welfare of the child, and that the relationship between the child and each parent should be fostered unless inconsistent with the child's best interests. Residential time and financial support are equally important components of parenting arrangements. The best interests of the child are served by a parenting arrangement that best maintains a child's emotional growth, health and stability, and physical care. Further, the best interest of the child is ordinarily served when the existing pattern of interaction between a parent and child is altered only to the extent necessitated by the changed relationship of the parents or as required to protect the child from physical, mental, or emotional harm."
RCW 26.09.002.

and which is being emulated by Aiden." RP (Nov. 21, 2014) at 7. But the trial court found that this conduct was primarily focused on Erin and not the children. The trial court acted well within its discretion when it concluded that the children were doing well and that it was in their best interest to leave the shared residential provisions intact. The court's restriction on the parents' contact with each other more than adequately addressed the concerns Erin raises here.

Restraining Order

Erin also argues the trial court abused its discretion when it declined to impose a restraining order against David under RCW 26.09.060.[7] Before the dissolution trial in April, Erin obtained a temporary restraining order against David pursuant to RCW 26.09.060. As part of the dissolution trial, Erin asked the court to continue this temporary restraining order, but the trial court denied the request: "I don't find there is a need going forward to continue that order in order to secure her physical safety." RP (April 16, 2014) at 20. At the November review hearing, Erin asked the court to reconsider this decision, arguing that David's behavior required reinstatement of the temporary restraining order. The trial court acted within its discretion when it declined to continue the restraining order. The trial court's unchallenged findings of fact support its conclusion that David's behavior did not require granting a restraining order.

---

[7] We note the parties' confusing reference to both a restraining order and domestic violence protection order in their briefs. In her opening brief, Erin relies heavily on RCW 26.50—the chapter governing domestic violence protective orders (DVPOs). Erin never petitioned for a DVPO under RCW 26.50 either at trial or the review hearing. Indeed, in her reply brief, Erin concedes she did not seek a DVPO under RCW 26.50. Instead she asked the trial court to reconsider its decision from the April 2014 order declining to impose a restraining order against David.

-14-

Similar to Erin's argument regarding the parenting plan, she failed to assign error to any of the trial court's findings. These unchallenged findings support the trial court's conclusion that continuing a restraining order was unnecessary. Though the trial court found that David had a history of domestic violence and on occasion, used abusive language toward Erin, it ultimately concluded the abusive language did not amount to domestic violence as defined by RCW 26.50. Further, the trial court made a specific finding that there were "significant issues surrounding the mother's credibility." CP at 565. Consequently, it found that Erin's claim "that the father's behavior towards her is negatively affecting the children emotionally is not supported by the evidence." CP at 565. In its oral ruling,[8] the trial court explained that David's conduct was not as egregious as Erin claimed: "While I believe that contacts that she's had with the father may trigger or exacerbate her PTSD symptoms, that doesn't mean that every contact is intended to cause that harm or to increase her level of anxiety." CP at 570. The trial court believed Erin's anxiety was caused by the nature of the parenting plan, not David's behavior:

> Where the plan clearly is not working is for the parents, although that's not my primary concern. The plan has not been beneficial to the mother or to her therapy, and it's contributed to ongoing parental conflict which I had hoped would not be the case. I don't find that there is a sufficient basis for a domestic violence protection order. The behavior of the father doesn't amount to the sort of domestic violence that would warrant a domestic violence protection order, but it's clear that the mother and father cannot co-parent without causing conflict that is detrimental to the mother, and which will impact the children adversely sooner or later.
> When the mother testifies that she's on edge all of the time, regrettably, I think this Parenting Plan contributes to that level of anxiety and discomfort.

---

[8] The trial court formally incorporated its oral ruling into its written findings and conclusions.

CP at 573. These unchallenged findings support its conclusion that a temporary restraining order was unnecessary.

Although the trial court did not grant Erin's request for a restraining order, it did impose several new restrictions in the parenting plan tailored to eliminate all but necessary contact between Erin and David. For example, one restriction prevented the parents from attending any of the children's school, extracurricular, or social functions while the other parent was present. Instead, each parent would only be able to attend such events during periods when the children are residing with that parent. Further, the parents are now required to exchange the children either at school or at a neutral location, and they must bring a third-party to facilitate the exchange. The parents are no longer allowed to communicate with each other and instead must do so through a case manager. Taken together, these new restrictions substantially reduced the opportunity for friction between the parents. The trial court wisely imposed these restrictions with the goal of benefitting the best interest of the children. Further, the trial court ordered David "to restart a one-year DV treatment program. . . . and to reengage in DV Dads." CP at 66. The court imposed consequences for his failure to complete DV treatment programs—"further restrictions" recommended by the GAL. CP at 566.

Given the trial court's unchallenged findings of fact and the deferential standard of review, we conclude the trial court acted well within its discretion when it declined to impose a restraining order against David.

Attorney Fees on Appeal

Finally, Erin asks that David pay her attorney fees on appeal pursuant to RAP 18.1 and RCW 26.09.140. Erin requests attorney fees based on her financial need and David's intransigence. The trial court awarded her no fees below.

David's alleged intransigence is not a basis to award Erin attorney fees. The trial court did "not find sufficient misconduct or intransigence on the part of the father to award fees to the mother . . . ." CP at 567. Erin did not challenge this finding, and there is nothing in the record to indicate anything has changed on appeal. Erin fails to assert any factual basis to support intransigence by David on appeal. David requests fees under RAP 18.9(a) based on a frivolous appeal. The appeal is not frivolous because it does raise some debatable issues.

Both parties submitted financial affidavits.[9] Erin establishes a need but David lacks the ability to pay. We therefore decline to award attorney fees to either party for this appeal.

---

[9] David moved and we grant his request for extension of time to file a financial affidavit pursuant to RAP 18.1(c).

## CONCLUSION[10]

The trial court did not abuse its discretion on any of its challenged rulings.

Attorney fees to either party are not warranted under the circumstances presented here.

We affirm the trial court in all respects.

WE CONCUR:

---

[10] Given our resolution in this case, we need not address Erin's request for a different judge on remand. The trial judge's fair and evenhanded management and rulings in both the trial and review hearing are evident in this record. No legal or factual basis exists to support Erin's request for a new judge. The request is arguably frivolous.