# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ANA A. DETWILER,<br><br>                    Respondent,<br><br>          v.<br><br>ROMAN N. YESKOV,<br><br>                    Appellant. | DIVISION ONE<br><br>No. 80875-3-I<br><br>UNPUBLISHED OPINION |

DWYER, J. — Ana Detwiler brought this action against Roman Yeskov, seeking imposition of a parenting plan and child support order for their child.  The trial court issued both orders, as well as a restraining order protecting Detwiler from Yeskov.  From the trial court's entry of these orders, Yeskov appeals, asserting various issues that he believes the trial court failed to consider.  As each ground for his appeal is without merit, we affirm.

I

Detwiler and Yeskov had a child, D.Y., in 2004.  Detwiler brought the present action in 2018.  After a two-day trial at which both parties represented themselves, the superior court made the following findings of fact:

> 2. The parties began their relationship in 2002, and separated in 2011.  The parties were never married.  The parties are originally from Russia/Moldova.  They had a child, [D.Y.] in 2004, who was born in the US.  The Mother currently lives with the Child in King County, WA, and the Father lives in Florida.  In the past, both parties have moved frequently to and from the US, with extensive periods spent in Moldova and other places.  The Father

is currently married to a woman living in Russia. The Father has a one-year old child in that relationship.

3. Since his birth, [D.Y.], the Child in this case, has been living with the Mother. Since birth, he periodically saw the Father and also communicated via Skype. However, since 2016, the Child has not seen or communicated with the Father.

4. During the Thanksgiving Holiday weekend in 2016, the Father came from Russia to visit the Mother in Bellevue, Washington. The Mother testified that the Father assaulted her in a car during this trip. The Mother testified that the Father nearly cracked her jaw. The Father denies any assault. The Court finds the Mother's claim of assault credible, and rejects the Father's denial. Along with her testimony[,] contemporaneous police and medical records support the Mother's claim.

5. The Mother testified that the Father had been dominating and aggressive in the past. The Mother's own mother also testified that the Father was rude and rough towards the Mother.

6. The court finds that [RCW 26.09.]191 restrictions are appropriate. The Court therefore limits the Father's visitations with the Child until he completes domestic violence treatment as provided in the Parenting Plan. The [Court] also orders reunification therapy and any communications/visitations with the Child shall be determined by the therapy.

7. Based on the evidence, the Court also finds that Restraining Order against the Father is appropriate. The Court renews the Order of Protection and Surrender of Weapons as well. However, the Court removes the Child from the protected person[s list] because the Court finds that the Father does not present danger to the Child.

8. With respect to Child Support, the Father requested that the standard amount of $686.44 be deviated to $520.07 to reflect his support of another child mentioned above. First, the Father works for IBM as a financial analyst in Florida. The Father provided his payroll information in Exhibit 74 showing gross monthly income of $5,015. The Father also testified that he owns a real estate business buying and selling houses, and earns approximately $400 per month. Secondly, the Father provided evidence of his financial support to his current spouse and the child. He testified that he sends on the average $1,000 per month. His documentary evidence, Exh. 72, however, showed only 4 payments from April, 2019 to September 2019 and there was no support for any other periods. Finally, the Father did not provide any information regarding any earning by his current spouse. Without such information, this Court is unable to determine the total financial circumstances of both households and deviate from the standard

2

transfer amount.  Therefore, the Court denies the Father's request for deviation.

The court imposed a parenting plan that reflected these findings, granting custody and all decision-making authority for the child to Detwiler, and restricting Yeskov's contact with D.Y. to a reunification therapy program that would commence upon Yeskov's completion of a domestic violence perpetrator's intervention treatment program.  The court also granted Detwiler a 10-year restraining order against Yeskov.[1]  Yeskov appeals.

II

Yeskov first asserts that the trial court erred when it failed to "consider deviation for [his] second child."  He appears to assert that the trial court did not adequately consider his need to provide child support for two children.  A review of the trial court's findings and conclusions indicates that the contrary is true.

We review a trial court's ruling entering a parenting plan for abuse of discretion.  In re Marriage of Kovacs, 121 Wn.2d 795, 801, 854 P.2d 629 (1993).  A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons.  In re Marriage of Littlefield, 133 Wn.2d 39, 46-46-47, 940 P.2d 1362 (1997).  A decision is manifestly unreasonable "if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard."

---

[1] Although the findings and conclusions make reference to a child support order, this order has not been included in the Clerk's Papers.

3

Littlefield, 133 Wn.2d at 47. We do not review the trial court's credibility determinations or weigh conflicting evidence. In re Marriage of Rich, 80 Wn. App. 252, 259, 907 P.2d 1234 (1996). "Findings of fact supported by substantial evidence, i.e., evidence sufficient to persuade a rational person of the truth of the premise, will not be disturbed on appeal." State ex rel. J.V.G. v. Van Guilder, 137 Wn. App. 417, 423, 154 P.3d 243 (2007). "Unchallenged findings of fact are verities on appeal." In re Matter of Custody of A.T., 11 Wn. App. 2d 156, 158 n.3, 451 P.3d 1132 (2019).

Finally, "'the law does not distinguish between one who elects to conduct his or her own legal affairs and one who seeks assistance of counsel—both are subject to the same procedural and substantive laws.'" In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993) (quoting In re Marriage of Wherley, 34 Wn. App. 344, 349, 661 P.2d 155 (1983)).

Here, the trial court considered, and rejected, the notion that Yeskov's having another child warranted a downward deviation in the amount of support owed for his first child. As part of the findings quoted above, the court found:

> With respect to Child Support, the Father requested that the standard amount of $686.44 be deviated to $520.07 to reflect his support of another child mentioned above. First, the Father works for IBM as a financial analyst in Florida. The Father provided his payroll information in Exhibit 74 showing gross monthly income of $5,015. The Father also testified that he owns a real estate business buying and selling houses, and earns approximately $400 per month. Secondly, the Father provided evidence of his financial support to his current spouse and the child. He testified that he sends on the average $1,000 per month. His documentary evidence, Exh. 72, however, showed only 4 payments from April, 2019 to September 2019 and there was no support for any other periods. Finally, the Father did not provide any information regarding any earning by his current spouse. Without such

information, this Court is unable to determine the total financial circumstances of both households and deviate from the standard transfer amount. Therefore, the Court denies the Father's request for deviation.

Plainly, the trial court considered Yeskov's request for a deviation, and all evidence supporting his request. But the court concluded that the proffered evidence was insufficient to support a downward deviation from the standard amount of support required. Indeed, Yeskov does not challenge this finding of fact. The court reached a result well within the range of acceptable choices. Yeskov's assertion to the contrary is devoid of merit.[2]

III

Next, Yeskov avers that the trial court failed to consider Detwiler's "moral character" when it awarded her sole custody and decision-making authority over their child. Once again, in doing so, he asks that we disregard the trial court's findings of fact so as to provide him the relief he seeks.

RCW 26.09.187(2)(b) states that "[t]he court shall order sole decision-making to one parent when it finds that: (i) A limitation on the other parent's decision-making authority is mandated by RCW 26.09.191." In turn, RCW 26.09.191(1) provides:

---

[2] While Yeskov cites to no authority supporting his argument in his opening brief, on reply, he cites to RCW 26.19.075(e)(iv), which states that

> [w]hen the court has determined that either or both parents have children from other relationships, deviations under this section shall be based on consideration of the total circumstances of both households. All child support obligations paid, received, and owed for all children shall be disclosed and considered.

Yeskov appears to assert that his obligations to support his second child are established simply by virtue of his marriage to that child's mother. However, he failed to produce any evidence of actual "child support obligations paid, received, and owed," as is required by RCW 26.19.075(e), and his testimony that he paid an average of $1,000 per month in support was contradicted by his own evidence. The trial court did not abuse its discretion by not crediting his proffered evidence.

5

The permanent parenting plan shall not require mutual decision-making or designation of a dispute resolution process other than court action if it is found that a parent has engaged in any of the following conduct: (a) Willful abandonment that continues for an extended period of time or substantial refusal to perform parenting functions; (b) physical, sexual, or a pattern of emotional abuse of a child; or (c) a history of acts of domestic violence as defined in RCW 26.50.010(3) or an assault or sexual assault that causes grievous bodily harm or the fear of such harm or that results in a pregnancy.

Pursuant to the trial court's unchallenged findings of fact, mutual decision-making was not an option for the parenting plan, due to the findings that Yeskov had both willfully abandoned the child and that he had a history of domestic violence. RCW 26.09.191(1)(c) does not allow for mutual decision-making in such circumstances. Yeskov, however, simply urges that we give greater consideration to his allegations of unsubstantiated parental kidnapping "and several other substantial moral issues." We decline the invitation.

IV

Finally, Yeskov avers that the trial court abused its discretion by imposing a 10-year restraining order to protect Detwiler. This is so, he asserts, because the parenting plan and child support orders will expire when their child attains the age of majority in less than 10 years.

The restraining order clearly states a purpose of protecting Detwiler, rather than the child. This is provided for in RCW 26.09.050(1), which states, in relevant part, that a court imposing a parenting plan shall "make provision for any necessary continuing restraining orders . . . [and] make provision for the issuance within this action of the restraint provisions of a domestic violence protection

order under chapter 26.50 RCW or an antiharassment protection order under chapter 10.14 RCW."

Substantial evidence supported the court's decision to enter a restraining order in this case. The trial court's unchallenged findings indicated that Yeskov had a history of domestic violence toward Detwiler, including the incident of assault during the 2016 Thanksgiving weekend and the "rude and rough" behavior testified to by Detwiler's mother. Yeskov's disputation in his reply brief of whether these events happened, and his prospective disavowal of an intent to harm Detwiler, is still another instance in which he asks that we re-weigh evidence already weighed by the trial court to overrule findings of fact which he does not challenge.[3]

Affirmed.

_Dwyer, J._

WE CONCUR:

_Andrus, A.C.J._      _Mann, C.J._

---

[3] Yeskov asserts that he has not violated the current order since 2016. Detwiler correctly notes that he is referring to a different order not subject to this appeal.